568 So.2d 1029 (1990)
AIRLINE CONSTRUCTION COMPANY, INC.
v.
ASCENSION PARISH SCHOOL BOARD.
No. 89-C-2697.
Supreme Court of Louisiana.
October 22, 1990.
*1030 Gordon A. Pugh, Murphy J. Foster, Steven B. Loeb, Breazeale, Sachse & Wilson, for Ascension Parish School Bd.
John W. Fichtel, III, Walton J. Barnes, for Airline Const. Co.
LEMMON, Justice.[*]
The issue in this case is whether an unsuccessful bidder on a public contract has a cause of action for damages against the public body which awarded the contract, when the unsuccessful bidder failed to seek an injunction against the public body's execution *1031 of the contract with the successful bidder or to take any steps to challenge the contract before filing suit to recover damages based on the public body's violation of the public bid laws.
In early 1986 the Ascension Parish School Board advertised for competitive bids for construction of a school project according to certain plans and specifications. The specifications expressly provided that any bids which were prequalified would be rejected.[1]
On July 25, 1986, the Board opened all bids that had been received. Shortly thereafter the Board awarded the contract for the project to Picou Brothers Construction Company, Inc.
On March 12, 1987, plaintiff, an unsuccessful bidder on the project, filed this action against the Board seeking to recover damages allegedly caused by the Board's improperly awarding the contract to Picou. Plaintiff alleged that Picou prequalified its bid by stating that some of its subcontractors would undertake the work at the quoted price only if they received payment of sums already owed to them before they entered into new subcontracts with Picou. Further alleging that its bid was actually the lowest responsible bid submitted in accordance with the plans and specifications, plaintiff asserted that the Board's arbitrary action in violation of its announced policies deprived plaintiff of the profit which plaintiff would have realized on the project. Plaintiff demanded $313,200 as the amount of lost profits and other emoluments it would have realized if the project had been awarded as required by law.
The Board filed an exception of no cause of action, denying knowledge of any violation of the public bid law and asserting that plaintiff's sole remedy in any event was injunctive relief afforded by La.Rev.Stat. 38:2220.[2] The Board stated in a brief in support of the exception that Picou had substantially completed the project by the time suit was filed.[3]
The district court maintained the exception and dismissed the suit. The court ruled that plaintiff's remedy was limited to injunctive relief, noting that La.Rev.Stat. 38:2220 authorizes a civil penalty only when the action is brought by the district attorney or the attorney general and makes no provision for either a civil penalty or damages in a case brought by "any interested party". The court further observed that since the suit was not filed until long after execution of the contract at a time when construction had almost been completed, the Board was faced with paying Picou the entire contract price and additionally paying plaintiff its lost profits, although plaintiff had performed no work.[4] Stating that this result should be avoided, the court cited Bristol Steel and Iron Works, Inc. v. State of Louisiana, Department of Transportation and Development, 507 So.2d 1233 (La.1987), which denied injunctive relief to the low bidder when the construction project was over ninety percent complete by the time the case got to this court.
*1032 On appeal the intermediate court reversed the judgment of the district court, overruled the exception of no cause of action, and remanded the case to the district court for trial on the merits. 549 So.2d 1240. Noting that La.Rev.Stat. 38:2220 provides expressly for injunctive relief, but does not purport to limit the remedy for violations of the public bid law solely to injunctions, the court of appeal concluded that an action for damages may be available to unsuccessful bidders when injunctive relief is not an adequate remedy. The court was particularly concerned with cases in which an unsuccessful bidder timely seeks injunctive relief, but the merits of the claim are never reached on appeal because of substantial completion of the project before appellate proceedings are completed, leaving the bidder without a remedy.[5] As to the problem of the Board's possibly having to pay two contractors on the same project, the court observed that courts which have nullified contracts awarded in violation of the public bid law have usually applied principles of equity in order to prevent unjust enrichment.[6]
We granted certiorari. 556 So.2d 26. We now reverse.
The public contract law requires that all public work done by a public body be advertised for competitive bids and be awarded to the lowest responsible bidder. La. Rev.Stat. 38:2211-26. This statutory law is a prohibitory law, founded on public policy, which was enacted in the interest of the taxpaying public. The purpose of the law is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant and extortionate prices. Haughton Elevator Division v. State of Louisiana through Division of Administration, 367 So.2d 1161 (La.1979); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943).
In a public project advertised for public bidding, there is no contractual relationship between an unsuccessful bidder and the public body who advertises for bids.[7] However, although an unsuccessful bidder does not have a cause of action in contract against the public body, the lowest responsible bidder does have a cause of action to challenge timely the rejection of his bid and to compel the award of the contract to him. Haughton Elevator Division v. State of Louisiana through Division of Administration, 367 So.2d 1161 (La.1979). Louisiana jurisprudence has long recognized that while a public body has some discretion in awarding public contracts, subject to judicial review, an unsuccessful bidder may sue to enjoin the public body from executing the contract or to set aside the award of the contract to another bidder when the public body acted arbitrarily in selecting the successful bidder. Sternberg v. Board of Commissioners of Tangipahoa Drainage District 1, 159 La. 360, 105 So. 372 (1925).
In 1979 the Legislature amended La.Rev. Stat. 38:2220 to recognize expressly this right to injunctive relief when a public body violates the public contract law and to authorize a civil penalty against a member *1033 of the public body who authorizes the violation. La. Acts 1979, No. 795 § 1. The statute, however, neither authorizes nor denies a cause of action for damages against the public body.
In the present case the Board's exception of no cause of action asserts that an unsuccessful bidder does not have a cause of action under any circumstances to recover damages against a public body which awards a public contract in violation of the public bid law. We do not reach this broad issue, but rather decide this case on the narrower holding that an unsuccessful bidder on a public contract who fails to resort to the relief granted by statute by attempting to enjoin timely the execution or the performance of the contract, when the facts necessary for injunctive relief are known or readily ascertainable by the bidder, is precluded from recovering damages against the public body.
In other jurisdictions an unsuccessful bidder, although having the right to seek prohibitory and mandatory injunctive relief, generally has no cause of action to recover anticipated profits against a public body for the wrongful award of a public contract to another bidder. 10 E. McQuillin, The Law of Municipal Corporations § 29.86 (3rd ed. 1990). Numerous cases from other jurisdictions have held that the authority for letting public contracts is derived for the public benefit and is not intended as a direct benefit to bidding contractors. See Conduit and Foundation Corp. v. Metropolitan Transportation Authority, 66 N.Y.2d 144, 495 N.Y.S.2d 340, 485 N.E.2d 1005 (1985) (the purpose of competitive bidding laws for public contracts is to guard against favoritism and corruption and to benefit the taxpayers, rather than to enrich the corporate bidders); Mottner v. Town of Mercer Island, 75 Wash.2d 575, 452 P.2d 750 (1969) (the purpose of the public contract law is not to benefit the unsuccessful contractor seeking a public works contract, but rather to protect the taxpaying public from arbitrary, capricious and fraudulent conduct on the part of public officials, and the law affords the unsuccessful bidder no remedy in damages); City of Scottsdale v. Deem, 27 Ariz.App. 480, 556 P.2d 328 (1976) (the rationale of the law is that the authority for letting public contracts is derived for the public benefit and is not intended as a direct benefit to the contractor); R.S. Noonan, Inc. v. School District of City of York, 400 Pa. 391, 162 A.2d 623 (1960) (allowing a low bidder to seek damages for violation of the statute would make the public body pay the difference between the lowest bid and the contract bid, as well as the profit that the lowest responsible bidder would have made but for the violation); Tectonics, Inc. v. Castle Construction Co., 496 So.2d 704 (Ala.1986) (the law requiring the award of a public contract to the lowest responsible bidder is for the benefit of the public and does not confer on a bidder any right enforceable at law or in equity); State Mechanical Contractors, Inc. v. Village of Pleasant Hill, 132 Ill.App.3d 1027, 87 Ill.Dec. 532, 477 N.E.2d 509 (1985) (public policy prohibits an unsuccessful bidder's remedy for lost profits, as this action would require the public to pay both the contract price to the successful bidder and the profits that would have been earned by the bidder who should have received the contract); Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940) (the federal Public Bid Law, 41 U.S.C. § 5, was not enacted for the protection of bidders and confers no enforceable rights upon them); Sutter Brothers Construction Co., Inc. v. City of Leavenworth, 238 Kan. 85, 708 P.2d 190 (1985) (an unsuccessful bidder on a public works project, who sought only damages and did not bring suit until after the contract had been awarded to another and had been executed, may not predicate a cause of action for damages against a public body solely upon an alleged violation of the competitive bidding statute after failing to exercise its remedy of seeking injunctive relief). See also Annot., Public Contracts: Low Bidder's Monetary Relief Against State Or Local Agency For Nonaward of Contract, 65 A.L.R. 4th 93 (1988).
Plaintiff contends, however, that this court should judicially recognize a cause of action by an unsuccessful bidder for damages against a public body under certain *1034 circumstances. According to plaintiff, Louisiana jurisprudence has recognized that when a public contract has been awarded in violation of the public bid law, the public body does not have to pay the contract price to the successful bidder, who (if in good faith) may recover only in quantum meruit. Coleman v. Bossier City, 305 So.2d 444 (La.1974); Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18 (1949); Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627 (1943). Plaintiff argues that an unsuccessful bidder who is deprived of a public contract because of a violation of the public bid law should not be deprived of a remedy when the project has been completed before appellate adjudication of the bidder's claim. In such a case, plaintiff argues, the profit denied to the successful bidder should be awarded to the bidder who would have obtained the contract if the public bid law had been followed. Such a solution encourages bidders to require enforcement of the public bid law, but involves no additional cost to the public fisc. Plaintiff also notes the following language in a footnote in Haughton Elevator Division v. State of Louisiana through Division of Administration, 367 So.2d 1161, 1169 n. 8 (La.1979):
[A] private person is liable for damages (here, apparently the loss of profits) to repair the injury caused by the breach of duty owed by contract, La.Civ.Code art. 1934, or by his fault for which he is delictually responsible, La.Civ.Code art. 2315. By the 1974 state constitution, a governmental entity is not immune "from suit and liability in contract or for injury to person or property". Art. 12, Section 10. At least arguably, the wrongful conduct of its employees makes the state liable for damages in the same manner as would be a private corporation for the wrongful acts of its employees which violated a duty owed to a person thereby injured.
The issue of whether an unsuccessful bidder ever has a cause of action for damages against the public body was not before the court in the Haughton Elevator case, and the language in footnote 8 is clearly dictum. Neither was the issue squarely presented to the court of appeal in the present case. The frequently occurring problem which troubled the court of appeal and which has bothered other courts simply did not occur herethat is, the dilemma created when an unsuccessful bidder files a timely application for injunctive relief which is denied in the district court and which is not reviewed on the merits by the appellate court because of substantial completion of the project during the lag time between the judgment of the district court and the review by the court of appeal. See Bristol Steel & Iron Works, Inc. v. State of Louisiana, Department of Transportation and Development, 507 So.2d 1233 (La. 1987) (Lemmon, J., concurring), which noted the need for legislation providing a limitation on the time for filing injunctions in these cases and an expedited procedure for disposition of appeals by preference over other cases.
The court of appeal in the present case may have been correct in stating that when an unsuccessful bidder has been caught on the horns of this dilemma, the bidder should be entitled to some relief, such as by taking away the profits from the successful bidder who should not have been awarded the contract and awarding the profits to the bidder who should have been awarded the contract. However, the unsuccessful bidder in the present case does not allege in his petition that he was caught in such a trap. Indeed, insofar as is shown by the petition in the present case (which is the only thing considered on an exception of no cause of action), plaintiff did nothing between the awarding of the contract in July, 1986 and the filing of the present action in March, 1987, although there was no apparent reason why plaintiff did not know or could not have determined that Picou's bid was prequalified and should have been rejected. An unsuccessful bidder should not be allowed to sit on its knowledge of the violation and claim damages after the public body can no longer as a practical matter correct any errors *1035 in letting the contract.[8]
We hold that an unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter can be taken by the public body. Cf. Gray v. State of Louisiana through the Department of Highways, 250 La. 1045, 202 So.2d 24 (1967) (landowners, although aware that their property was being appropriated for borrow pit purposes, did not seek to enjoin the entry onto their land and the removal of dirt, but filed suit only two days before the job was completed, and the court denied damages for trespass, limiting recovery to just compensation for the property taken). If an aggrieved bidder does not timely file a suit for injunction, he has waived any right he may have to claim damages against the public body or the successful bidder.
The timeliness of a suit for injunction depends on the facts and circumstances of the particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the successful bidder, and the time period between the awarding of the illegal contract and the completion of construction.
The petition in the present case fails to state either that a suit for injunction was filed timely or that circumstances existed which made the filing of a timely suit for injunction impossible. Plaintiff has therefore failed to state a cause of action.
Plaintiff does assert in its brief that it "acted with due haste and in a timely fashion".[9] Because La.Code Civ.Proc. art. 934 requires the court to allow a plaintiff to amend the petition when the grounds of an objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception of no cause of action shall order such amendment.
Accordingly, the judgment of the court of appeal overruling the exception of no cause of action is reversed, and the exception is maintained. Plaintiff is granted fifteen days from the finality of this judgment within which to amend its petition, if possible, in order to state a cause of action. In default of a timely amendment, the petition will be dismissed.
SHORTESS, J. Pro Tem., concurs and assigns reasons.
WATSON, J., concurs to state that he sees no possibility of amending to state a cause of action.
DENNIS, J., dissents with reasons.
MELVIN A. SHORTESS, Justice Pro Tem., concurring.
I concur with the result because implicit in this decision is the notion that the unsuccessful bidder who timely brings suit for injunction has an action in damages. We don't define what kind of damages. I write to state my opinion that lost profits should not be an appropriate measure of damages in this type of case. Damages should be limited to those items as are provided for in LSA-R.S. 39:1678.1. This statute became law in 1988, after the operative facts of this case.
I respectfully concur.
NOTES
[*] Judge Melvin A. Shortess of the Court of Appeal, First Circuit, participated in this decision as Associate Justice Pro Tempore.
[1] A prequalified bid is one which is conditioned upon or qualified by the occurrence of some event.
[2] La.Rev.Stat. 38:2220 provides:

A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
B. The district attorney in whose district a violation of this Part occurs, the attorney general or any interested party possesses a right of action to bring suit for appropriate injunctive relief in the district court to nullify a contract entered into in violation of this Part.
C. Where a judgment of nullity is rendered in any action brought by a district attorney or by the attorney general pursuant to Subsection B of this Section the district court may award a civil penalty not in excess of fifty thousand dollars against each offending member of the governing authority of the public entity who authorized the violation.
[3] According to the Board, the contract called for work to begin on August 4, 1986 and to be completed by December 29, 1986. A change order was subsequently approved by the Board which allowed an additional ninety-five days for completion.
[4] At the time of the hearing on the exception (which had been continued several times), the parties conceded that construction had been completed.
[5] Because La.Code Civ. Proc. art. 931 prohibits the introduction of evidence to support or controvert an exception of no cause of action, the court of appeal ruled that the district court should not have considered the Board's assertion in brief that the project was substantially complete when suit was filed.
[6] The court of appeal cited Coleman v. Bossier City, 305 So.2d 444 (La.1974), which held that when there was a contract between a city and a real estate developer for the city to reimburse the developer one-half of the actual costs of the subdivision improvements constructed under the city's supervision, the contract was invalid for lack of public bidding, but since both parties were in good faith, the developer was entitled to recover on a quantum meruit basis the amount of the actual cost only. The court also referred to La.Civ.Code art. 2033, which provides:

[A]n absolutely null contract ... is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages.
[7] A bid in response to a solicitation for competitive bidding constitutes no more than an offer, and a contract does not exist until the bid is accepted. 1 Williston, Contracts § 31 (3rd ed. 1957). The public body's advertising for competitive bidding is a mere invitation for offers and is not itself an offer, subject to acceptance by the submission of a bid.
[8] This theory is similar to the contemporaneous objection rule. If an objection to a question to a witness or to introduction of other evidence is not raised at a time when the error in allowing the question or admitting the evidence can be corrected, the objection is waived.
[9] The Board counters in brief that "plaintiff waited until the successful bidder had almost substantially completed the project before bringing this suit".