| í KOSTELKA, J.
Plaintiff appeals the rejection of his suit to collect damages against a public body for the alleged wrongful award of a construction contract to a competitor. Finding that plaintiff failed to prove he sought a proper remedy as soon as the facts necessary therefor became readily ascertainable, we affirm the judgment of the district court.
Facts and ProcedüRal History
During October 1993, the City of Shreveport (“City”) solicited bids on behalf of the Shreveport Airport Authority to construct an above-ground storage tank fuel farm at the Shreveport Regional Airport. John Webb, on behalf of Webb Construction, Inc., (collectively “Webb”) prepared and submitted a bid in accordance with the specifications. However, when bids were opened and read on November 11, 1993, another enterprise, Netherton Company (“Netherton”), was the apparent low bidder. Webb was the second lowest bidder.
In addition to the specifications for the construction project and other various provisions, the bid documents supplied by the City contained requirements concerning the type of bid bond that would be acceptable. Language appearing at the bottom of the bid bond form designated that “[sjurety companies executing BONDS must appear on the Treasury Department’s most current list ... and be authorized to transact business in the state where the project is located.” A similar definition of an “acceptable surety company” appears in a section of the bid documents entitled “Insurance Requirements for Contractors.” Netherton supplied a bid bond from Patterson Insurance Company (“Patterson”), a surety who did not appear on the requisite Treasury Department List.
Although unaware of the particular facts of the bid which Netherton submitted for this project, Webb did know that Nether- *609 ton had encountered financial difficulties during another recent construction project. Thus, at the time | ;.of the bidding process, Webb suspected that Netherton would not be able to post a bond that comported with the bid specifications. Accordingly, five days after the bids were opened (November 16, 1993), Webb wrote a letter to John Eason (“Eason”), the City’s Purchasing Agent, questioning the validity of Nether-ton’s bid bond and requesting copies of those documents for his own review.
On the same date, Tammy Shogren (“Shogren”), the City’s Manager of Administrative Services, composed an inter-office memo directed to Jerry Jones (“Jones”), the City Attorney. Shogren revealed that Eason had informed her that the supplier of Netherton’s bid bond, Patterson, did not meet the qualifications specified in the bid documents, i.e., Patterson was not on the Treasury Department list. She further stated that Eason had already received inquiries about this matter which might lead to a protest of the bid. Shogren sought Jones’s advice as to whether the City could accept the bid and award the contract to Netherton. Although the record contains no evidence of a specific, written response to this inquiry, the contract was, in fact, awarded to Netherton.
Meanwhile, Webb followed his November 16 letter to Eason with periodic phone calls. Webb estimates that he called Ea-son every two or three days. Eason would tell him that the documents were still in the legal department. Eventually, Webb was told that Netherton’s bid ‘bond was satisfactory. But, Webb did not receive the copies of the bid documents he requested. Nevertheless, he made no efforts beyond the letter and phone calls to obtain the documentation.
Finally, in January 1994, Webb received a letter from the City informing him that the contract had been awarded to Nether-ton in December 1993. Shortly thereafter, Webb drove past the project site and noticed that construction had begun. Although satisfied that the City would not have awarded the contract to Netherton had the bid bond been inadequate, Webb remained curious about the situation. Accordingly, he made three separate trips to the courthouse trying to | ¡¡locate the contract . and its supporting documentation. However, the City had neglected to file the contract.
Then, in late February or early March 1994, while meeting with his attorney on an unrelated matter, Webb mentioned his recent experience with the public bid process. The attorney, Evan Rogers (“Rogers”), offered his assistance in procuring the documentation. Thus, on March 2, 1994, Rogers wrote a letter to Jones requesting the bid and contract documents on behalf of Webb.[1] Rogers testified that it took four weeks, with one or two phone calls per week, to get a response. In April 1994, Jones finally provided the requested documentation. At that time, Webb first became aware that Patterson was Nether-ton’s surety for the bid bond. Webb also learned that the City had been aware of the problem as early as November 16, 1993. Yet, Jones assured Rogers (and Webb) that the problem had been rectified in that Netherton had substituted certified funds in lieu of the defective bid bond. Rogers then requested copies of the certified funds, as they had not been included with the previously-released documentation.
For nearly two months, Jones assured Rogers that he was collecting the information regarding the certified funds and would supply it as soon as it was available. Finally, on June 19, 1994, Jones called Rogers and admitted that the City had made a mistake and never procured certified funds from Netherton. Yet, the construction project was almost finished by *610 this time. Jones revealed that the City was attempting to put together a settlement package for Webb; thus, Rogers believed there was no need to file suit to nullify the contract during this time of open communication between the parties.
1 ¿Ultimately, in mid-August 1994, Jones informed Rogers and Webb that there would be no settlement. Construction on the tank fuel farm was then complete.
Two weeks later, on August 26, 1994, Webb Construction, Inc. filed suit against the City claiming that Netherton’s bid complied with neither the contract provisions nor La. R.S. 38:2218. Webb sought an award for lost profits and other items of damages. The City responded to the petition with an exception of no cause of action which the trial court granted. This court, relying on Airline Construction Co. v. Ascension Parish School Board, 568 So.2d 1029 (La.1990), agreed that Webb had failed to state a cause of action in that he did not seek nullity of the contract or state in specific detail the circumstances that pi'evented him from filing a timely suit for injunction. Webb Construction v. City of Shreveport, 27,761 (La.App.2d Cir.12/06/95), 665 So.2d 653 (“Webb I”). Per La. C.C.P. art. 934, the matter was remanded to afford Webb an opportunity to amend his petition with such allegations as would satisfy the requirements of La. R.S. 38:2220(B) (the Public Contracts Law) and remove the grounds of the exception.
Webb filed his amended petition on December 15, 1995, demanding a judicial declaration of the nullity of the contract between the City and Netherton. He additionally alleged facts regarding the verbal and written requests for information he had made to the City and averred that he did not have sufficient knowledge of any deficiencies until he received the bidding documents, some time after the contract was awarded to Netherton. Again, the City challenged the petition through an exception of no cause of action, claiming that Webb added no new substantive facts but merely reworded and embellished the prior allegations. The trial court again granted the exception of no cause of action and dismissed the case with prejudice.
|sOn the second appeal, Webb Construction v. City of Shreveport, 30,491 (La.App.2d Cir.05/13/98), 714 So.2d 119 (“Webb II”), this court found Webb’s petition to be sufficient:
Accepting the allegations set forth in Webb’s amended petition as true, Webb made repeated efforts to investigate alleged deficiencies in the contract between the City and Netherton. The inaccurate information provided by the City concerning the validity of the contract made it impossible for Webb to “readily ascertain” facts necessary to enjoin the award or performance of the contract. In its amended petition, Webb specifically stated that, because of the actions of the City, it was unable to timely file a suit for injunction, and therefore, it requested that the contract be declared null. In essence, Webb asserted that the facts necessary for in-junctive relief were neither known nor readily ascertainable by Webb prior to the award and performance of the contract. Consequently, the amended petition states a cause of action under LSA-R.S. 38:2220(B).
The matter was remanded to the trial court for further proceedings.
Thereafter, the parties participated in trial on the merits, in which Webb was given the opportunity to prove his allegations regarding his difficulties in obtaining Netherton’s bid documents, the insufficiency of the bid bond, and the damages he sustained. Finding that the bid bond supplied by Netherton met the requirements of La. R.S. 38:2219 and that the City had rightfully accepted Netherton’s bid, the district court again rejected Webb’s demands. This appeal ensued. For reasons different from those given by the trial court, we affirm.
*611 Discussion

Law of the Case

In his first argument to this court, Webb urges that we follow the law set forth in our prior ruling in Webb II. Our conclusion, he contends, that his petition stated a cause of action has become the law of the case.[2] Having presented 1 fievidence at trial in support of the allegations made in his petition, Webb believes the trial court was constrained to find in his favor. We disagree.
This court’s review of a judgment on an exception of no cause of action requires us to accept the allegations of the petition as true only for the purpose of the exception. Clearly, any conclusions reached during the previous appeals did not result from reviewing the evidence produced at a trial on the merits. Thus, any subsequent ruling in the matter, by the trial or appellate courts, would be based upon a determination of whether Webb carried his burden of proving those facts alleged in his petition. For the rejection of a similar theory, see Trahan v. McManus, 97-1224 (La.03/02/99), 728 So.2d 1273, n. 4.

Public Contracts Law

Louisiana law requires that all public work exceeding a certain sum shall be advertised and let by contract to the lowest responsible bidder who bids according to the contract, plans, and specifications as advertised. La. R.S. 38:2212(A)(1)(a). Per La. R.S. 38:2220, any contract entered into for the construction of public works which is contrary to the provisions of this statute shall be null and void. D’Arbonne Construction Co. v. Union Parish Police Jury, 31,834 (La.App.2d Cir.05/05/99), 736 So.2d 981, unit denied, 99-1549 (La.09/17/99), 747 So.2d 562. The available statutory remedies for a violation of the Public Contracts Law are outlined in La. R.S. 38:2220(B): the aggrieved bidder may institute a summary proceeding to enjoin the award of the contract or other appropriate injunctive relief; or the unsuccessful bidder may bring ordinary proceedings to nullify the | 7contract. Anne Lind & Assoc. v. Orleans Private Industry Council, 98-0848 (La.App. 4th Cir.02/03/99), 729 So.2d 1067, writ denied, 99-0623 (La.04/23/99), 742 So.2d 887.
An unsuccessful bidder on a public contract who wishes to obtain relief after the rejection of its bid must seek injunc-tive relief at a time when the grounds for attacking the wrongful award of the contract were known or readily ascertainable by the bidder and when corrective action, as a practical matter, can be taken by the public body. Airline, supra; Webb I. Prior to the 1990 amendment to La. R.S. 38:2220(B)[3], if the aggrieved bidder did not file a suit for injunction, he had waived any *612 right he may have had to claim damages against the public body or the successful bidder. Airline, supra. Clearly, a timely and successful suit for injunction would block the award or performance of the contract and, for the most part, eliminate the unsuccessful bidder’s claim for damages. Webb I. After the 1990 amendment to Section B, if an aggrieved bidder demonstrates that it was not possible to file a timely petition for injunction, he can, nevertheless, institute ordinary proceedings seeking nullity of the wrongfully awarded contract. Webb I; Hard Rock Construction, Inc. v. Parish of Jefferson, 96-797 (La.App. 5th Cir.01/28/97), 688 So.2d 134.[4]
Webb did not file suit until the project had been completed, making any injunctive relief meaningless by that time. Thus, the question becomes whether Webb has proven that he did not possess, nor could he reasonably have ascertained, the knowledge necessary to bring a timely suit for injunction. The timeliness of a suit for injunction depends on the facts and circumstances of the | particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the successful bidder, and the time period between the awarding of the illegal contract and the completion of construction. Airline, supra.
As early as the day the bids were opened, Webb knew that the apparent low bidder had recently been in financial trouble. Webb then had over a month to verify his suspicions and initiate suit for injunctive relief. Of course, Webb did request the pertinent documentation from the City. Yet, the City’s lack of diligence in producing the documents does not excuse Webb’s lack of diligence in procuring them. Webb wrote a letter and made several phones calls but he, by no means, exhausted the remedies available to him. Under the Public Records law, La. R.S. 44:1, et seq., Webb had a right to the requested documents. And, upon the City’s refusal to produce them, Webb should have availed himself of the provisions of La. R.S. 44:35, which allows the institution of proceedings for the issuance of a writ of mandamus, injunctive or declaratory relief, together with attorney’s fees, costs, and damages. Webb’s suspicions, coupled with his right to obtain the documentation needed to confirm his beliefs, demonstrates that Webb could have readily ascertained the information necessary to bring his suit for injunctive relief.[5] Moreover, despite obtaining additional information, Webb’s inaction continued until after the construction project had been completed.
Upon considering the evidence presented at trial, we conclude that Webb has failed to prove the allegation in his petition that it was impossible for him to seek timely injunctive relief. Accordingly, his suit fails.
| yOther Issues
Thus, we do not reach the issue of the validity of Netherton’s bid bond.[6] Nor need we determine what damages might *613 be due to an unsuccessful bidder. Nevertheless, we note that this issue remains unresolved in the jurisprudence. One purpose of the Public Contract Law is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant and extortionate prices, i.e., the law purports to protect the public fisc. Airline, supra. The fourth circuit has reasoned that an award of damages to an unsuccessful bidder would be violative of public policy. Anne Lind, supra. Indeed, this court has questioned whether the statute provides for any remedy beyond injunctive relief. D'Arbonne, supra.'[7]
Conclusion
Accordingly, for the foregoing reasons, the judgment below is affirmed at Webb’s costs.
AFFIRMED.
CARAWAY, J., concurs with written reasons.

. Rogers believed injunctive relief was no longer available in that construction on the project was already underway.

. The "law of the case” principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial; (b) the conclusive effects of appellate rulings at trial on remand; and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Reargu-menl in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Robideau v. Johnson, 31,770 (La.App.2d Cir.03/31/99), 731 So.2d 955, writ denied, 99-1564 (La.09/17/99), 747 So.2d 562; Richard v. Wal-Mart Stores, Inc., 29,926 (La.App.2d Cir. 10/31/97), 702 So.2d 79, writ denied, 97-3002 (La.02/06/98), 709 So.2d 744. The law of the case applies to parties who were parties when the former decision was rendered and who thus had their day in court. Reasons for this doctrine include: to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Robi-deau, supra.

. The 1990 amendment to La. R.S. 38:2220(B) added the provision allowing an "ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.”

. This court, in Webb I, determined that the rationale of Airline, supra, was essentially unchanged by the 1990 amendment to La. R.S. 38:2220. The Hard Rock court cited Webb I with approval.

. In considering a similar issue, the first circuit has extended the rationale of Airline to require not only timely filing for injunctive relief but also the diligent pursuit of legal action. See discussion in n. 1, Hartman Enterprises, Inc. v. Ascension-St. James Airport & Transportation Authority, 582 So.2d 198 (La.App. 1st Cir.1991), writ denied, 582 So.2d 195 (La.1991).

.Issues raised on appeal concerned whether the adequacy of Netherton's bid bond should be governed by the provisions of La. R.S. 38:2218 or La. R.S. 38:2219; and, what effect is had by the requirements for bid surety as found in the bid documentation. Likewise, we need not address the propriety of the City withdrawing one of its prior admissions of fact on the day before trial.

. In State Machinery & Equipment Sales v. Livingston Parish Gravity Drainage No. 5, 98-1207 (La.App. 1st Cir.06/25/99), 742 So.2d 26, the first circuit ruled in favor of an unsuccessful bidder and found it to be entitled to assert a claim for damages against the drainage district. As the trial court had curtailed any testimony regarding damages, the case was remanded for "further proceedings relative to an award of damages." Nevertheless, in a concurring opinion, Judge Fitzsimmons points out that "the question of the types of damages that may be allowed in the suit against the Gravity Drainage District, such as loss of profits, quantum meruit, or expenses of the preparation and submission of the bid, is undecided.”