CARAWAY, J.
 

 |tAn unsuccessful bidder sought an injunction against a parish police jury seeking to stop the award of a gravel hauling contract to another bidder on the grounds that the bidding process violated the public works law. The police jury reconvened for a declaratory judgment and filed exceptions to the petition for injunction. The trial court rendered declaratory judgment upholding the action of the police jury and granted both exceptions. The unsuccessful bidder appeals. Finding that the peremptory exception of no cause of action applies to all claims against the police jury, we affirm the dismissal of plaintiffs claims and find the declaratory judgment moot.
 

 Facts
 

 The Richland Parish Police Jury (“Police Jury”) advertised for public bids for a contract for the hauling of gravel. In relevant part, the advertisement read as follows:
 

 Separate sealed bids for furnishing the following materials for a period of one (1) year, effective January 1, 2009, through December 31, 2009, will be received by the Richland Parish Police Jury, Fourth Floor, Courthouse Building, Rayville LA, Until 6:00 P.M. (Local Time), Monday December 01,' 2008. Bids will be opened and publicly read aloud during the regularly scheduled Police Jury meeting to be held December 01, 2008, beginning at 6:00 P.M.
 

 [[Image here]]
 

 The Richland Parish Police Jury reserves the right to waive any and/or all informalities and accept or reject any or all bids.
 

 F & S EMT, Inc., through its president, Terry Smith (hereinafter “Smith”), submitted a bid in response to the advertisement. The bid contained the following notation: “Fuel surcharges will be applied according to the inflation of fuel cost.”
 

 |gAt the scheduled December 1, 2008 meeting, four bids were received and opened for the 2009 gravel hauling contract. The bids included Smith’s, on behalf of F & S, EMT, Inc., and a bid by Larry Harris (“Harris”), on behalf of Delhi Dump Truck, LLC (“DDT”).
 

 The time of Harris’s submission of the DDT bid became the focus of dispute prompting this litigation. Harris claims that he was present at the meeting at 6:00 p.m. with the bid in hand and turned the bid in to the Police Jury on or before 6:00 p.m. by placing an unstamped and unidentified envelope on the police jury table prior to the beginning of the meeting. Conflicting versions of the event suggest that Harris placed the bid on the jury table just prior to the time that the bids were called, opened and publicly read at approximately 8:30 p.m. The parties agree
 
 *540
 
 that the four bids were opened and read at that time.
 

 The Police Jury took the award of the contract under advisement until the next scheduled regular meeting of January 12, 2009. At that meeting the Police Jury unanimously accepted the bid of DDT as the lowest bid for the hauling contract. At the February 2, 2009 regularly scheduled Police Jury meeting, a motion was made and carried “to turn over the acceptance of the hauling bids for 2009 to the District Attorney and call for a Special Meeting with the attorney and Police Jury.” A special meeting of the Police Jury was convened on February 17, 2009. The minutes show that a motion was carried for the Police Jury to enter into executive session “to discuss hauling bids.” Subsequently, a second motion was carried to reconvene the regular session and the meeting was adjourned.
 

 |oOn February 26, 2009, Smith filed this action as a petition for injunction against the Police Jury seeking to enjoin it “from executing any contract with Delhi Dump.” The petition claimed that the DDT bid was not timely submitted before the 6:00 p.m. deadline for submission of bids. No order setting the date of an injunctive hearing was requested, and no date was ever officially set.
 

 In a pleading entitled, “Petition for Declaratory Judgment and Exceptions,” the Police Jury made response to Smith’s injunction action on March 27, 2009. The pleading was filed under the same suit number. Yet, it did not set forth that is was a reconventional claim. The Police Jury named Smith and DDT as defendants in its reconventional claim to determine whether the acceptance of DDT’s bid was proper under Louisiana Public Bid Law. The Police Jury alleged “that at the time of the District Attorney investigation into this matter, the Delhi Dump Truck, LLC bid had already been accepted as the low bid, and hauling was occurring by Delhi Dump Truck.” The Police Jury further alleged that DDT’s bid was not disqualified because all bids were opened together and that Smith’s bid was non-responsive because the fuel surcharge was not defined. The Police Jury requested that the declaratory judgment be heard on April 27, 2009, the date allegedly scheduled for the preliminary injunction hearing.
 

 The Police Jury also filed exceptions to Smith’s petition for injunction on the grounds of prematurity and improper use of summary proceedings. In particular, because the contract was awarded on January 12, |42009, and the Police Jury had begun purchasing gravel from DDT, the Police Jury argued that Smith no longer had a right to seek injunctive relief.
 

 Hearing on the declaratory judgment occurred on April 29, 2009. The case proceeded with the Police Jury calling its witnesses and presenting its case for declaratory judgment despite no answer to that action having been filed by Smith. The record does not clearly indicate that the hearing involved Smith’s preliminary injunction request. Eight of the parish police jurors involved in the subject bidding process, who were present at the December 1 Police Jury meeting, testified. Additionally, both Smith and Harris took the stand.
 

 Harris testified that this was his first public bid and that when he got to the fourth floor, “there was nobody there except for in the meeting.” He testified that he did not “go to any office because nobody was[ ] in the office.” He claimed that he had his bid in hand when he arrived for the meeting before 6:00 p.m. He stated that he walked into a preliminary meeting and a gentleman told him to give the bid to Larry Wheeler, the parish manager. Harris “put the envelope right in front of him
 
 *541
 
 on the table” and then sat down. Harris testified that his bid was turned in before 6:00 p.m. Harris explained that the lack of his company’s name on the envelope precipitated Wheeler to ask what the envelope ■was. Hams testified that he informed Wheeler that the bid "was for DDT. Harris also stated that when the issue of the timing of his bid was made, DDT had begun work under the contract.
 

 |r,Terry Smith testified that he recalled Harris arriving at the Police Jury meeting after 6:00 p.m. and that the Police Jury got to the bids at approximately 8:30 p.m. Smith testified that he saw Harris turn in his bid at the time of the opening of the bids.
 

 Larry WTieeler testified that at the subject Police Jury meeting, he opened the bids. Wheeler could not recall whether DDT’s bid was handed to him prior to the meeting, but he knew that the bid was among the other bids that were placed on the table. He also remembered that the envelope was blank which caused him to inquire about what it was.
 

 Each of the police jurors testified to their familiarity with the bidding process in question. The jurors -were inconsistent in their testimony regarding whether Harris was present before the meeting began and when he placed the bid on the table. All agreed that the bids were opened and read together and that Wheeler inquired about DDT’s bid.
 

 After considering the testimony and evidence, the trial court granted declaratory judgment in favor of the Police Jury finding that “the Richland Parish Police Jury properly accepted the bid of Delhi Dump Truck, LLC for 2009 gravel hauling. The bid of Delhi Dump Truck, LLC was the lowest and most definite bid, and it is the Court’s finding that the bid was timely received.” The court also sustained the Police Jury’s exceptions of prematurity and unauthorized use of summary proceedings. Smith now appeals contesting the declaratory judgment and the manner in which the DDT bid was accepted at the December 1 meeting.
 

 |
 
 ⅛Discussion
 

 The initial action taken by Smith contesting his unsuccessful bid on a public contract is authorized under La. R.S. 38:2220, which provides, in pertinent part, as follows:
 

 A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
 

 B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.
 

 The leading case interpreting the right of injunctive relief of an unsuccessful bidder is
 
 Airline Const. Co., Inc. v. Ascension Parish School Bd.,
 
 568 So.2d 1029 (La.1990).
 
 Airline
 
 was an action for damages by an unsuccessful bidder against a school board in which the supreme court sustained an exception of no cause of action. The court’s ruling dismissing the suit noted that the petition did not state whether the project was completed when the suit was filed, whether a suit for injunction had been timely filed or whether “circumstances existed which made the filing of a timely suit for injunction impossible.”
 
 Id.
 
 at 1035. In granting the exception of no cause of action, the court explained:
 

 
 *542
 
 The public contracts law is a prohibitory law, founded on public policy, which was enacted in the interest of the taxpaying public. The purpose of the law is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant and extortionate prices.
 

 |7In a public project advertised for public bidding, there is no contractual relationship between an unsuccessful bidder and the public body who advertises for bids. However, although an unsuccessful bidder does not have a cause of action in contract against the public body, the lowest responsible bidder does have a cause of action to challenge timely the rejection of his bid and to compel the award of the contract to him. Louisiana jurisprudence has long recognized that while a public body has some discretion in awarding public contracts, subject to judicial review, an unsuccessful bidder may sue to enjoin the public body from executing the contract or to set aside the award of the contract to another bidder when the public body acted arbitrarily in selecting the successful bidder.
 

 In 1979 the Legislature amended La. R.S. 38:2220 to recognize expressly this right to injunctive relief when a public body violates the public contract law and to authorize a civil penalty against a member of the public body who authorizes the violation. The statute, however, neither authorizes nor denies a cause of action for damages against the public body.
 

 In the present case the Board’s exception of no cause of action asserts that an unsuccessful bidder does not have a cause of action under any circumstances to recover damages against a public body which awards a public contract in violation of the public bid law. We do not reach this broad issue, but rather decide this case on the narrower holding that an unsuccessful bidder on a public contract who fails to resort to the relief granted by statute by attempting to enjoin timely the execution or the performance of the contract, when the facts necessary for injunctive relief are known or readily ascertainable by the bidder, is precluded from recovering damages against the public body.
 

 Airline Const., supra
 
 at 1032-1038 (citations omitted).
 

 The overriding question which is therefore presented in this dispute is whether Smith followed the
 
 Airline
 
 ruling in filing this suit and pursuing his claim. Following the December 1, 2008 opening of the bids at the Police Jury meeting, Smith waited until February 26, 2009, to seek injunctive relief. He did so despite his belief regarding Harris’s late arrival at the December meeting and the untimely submission of the DDT bid. Smith also |sknew that the Police Jury had not rejected DDT’s bid at the December meeting and that it had in fact awarded DDT the contract in January. Smith’s petition for injunctive relief made no allegation that circumstances existed which prevented him from filing the suit before the award of the contract, and indeed his actual testimony confirms his knowledge of DDT’s filing of its bid which he alleges to have been untimely.
 

 In partial response to Smith’s claims, the Police Jury filed an exception which it labeled an “Exception of Unauthorized Use of Summary Proceedings.” The legal reasoning presented in support of the exception, however, claimed that injunctive relief was unavailable to Smith since the public contract had been previously awarded and work on the contract had begun. With such argument, the Police Jury was effectively claiming that Smith no longer had a cause of action in accordance with
 
 *543
 
 the ruling in
 
 Airline,
 
 even though the
 
 Airline
 
 decision was never specifically cited to the court. In addition, the Police Jury filed a separate claim for declaratory judgment in which it asserted its defense that the public bid law had not been violated.
 

 From this review of Smith’s claim and the narrow relief which the
 
 Airline
 
 ruling and La. R.S. 38:2220 afford to an unsuccessful bidder on a public contract, we affirm the trial court’s grant of the Police Jury’s exception which substantively raised the peremptory challenge of no cause of action.
 
 [1]
 
 We further deny any allowance for amendment of Smith’s 19petition under La. C.C.P. art. 934 for any possible damage claim left unanswered by the
 
 Airline
 
 ruling, since the evidence demonstrates that Smith was not prevented by any circumstances from timely seeking mandatory injunctive relief for the award of the contract in his favor.
 

 With this ruling, the issue of the trial court’s judgment on the Police Jury’s claim for declaratory relief is moot, as the matter has been fully adjudicated by the enforcement of the peremptory exception for the dismissal of all claims arising from this public bid law transaction.
 

 Conclusion
 

 For the reasons noted above, we grant the peremptory exception of no cause of action and affirm the dismissal of Smith’s claims against the police jury thereby mooting the declaratory judgment. Costs of this appeal are assessed to Smith.
 

 AFFIRMED.
 

 [1]
 

 . The court shall give substance to the pleading and exception regardless of its label.
 
 Ken Lawler Builders, Inc. v. Delaney,
 
 36,263 (La.App.2d Cir.8/14/02), 837 So.2d 1;
 
 Steed v. St. Paul's United Methodist Church,
 
 31,521 (La. App.2d Cir.2/24/99), 728 So.2d 931,
 
 writ denied,
 
 99-0877 (La.5/7/99), 740 So.2d 1290. Additionally, the court of appeal on its on motion can raise the peremptory exception of no cause of action. La. C.C.P. art. 927 B.