| WAREHOUSE CAFE PROPERTIES, L.L.C. | * | NO. 2024-CA-0127 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| THE ERNEST N. MORIAL CONVENTION CENTER | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-13248, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *
(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Rachael D. Johnson)


Kenneth R. Barnes, Jr.
LAW OFFICE OF KENN BARNES
650 Poydras Street, Suite 1140
New Orleans, LA 70130

K. Todd Wallace
WALLACE MEYASKI, LLC
5190 Canal Blvd, Suite 102
New Orleans, LA 70124

Charles L. Rice, Jr.
RICE LAW GROUP, LLC
3501 Tulane Ave
New Orleans, LA 70119


      COUNSEL FOR PLAINTIFF/APPELLANT

Larry M. Roedel
Bradley C. Guin
ROEDEL PARSONS BLACHE FONTANA PIONTEK & PISANO
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809

      COUNSEL FOR DEFENDANT/APPELLEE, ERNEST N. MORIAL NEW
      ORLEANS EXHIBITION HALL AUTHORITY

Stephen I. Dwyer
Susanne M. Cambre
Ryan M. McCabe
W. Nicholas Dietzen
DWYER CAMBRE & SUFFERN, APLC
3000 West Esplanade Avenue, Suite 200
Metairie, LA  70002

COUNSEL FOR INTERVENOR/APPELLEE, RIVER DISTRICT
NEIGHBORHOOD INVESTORS, LLC

**AFFIRMED**

**SEPTEMBER 3, 2024**

In this appeal involving a request for injunctive relief, the plaintiff, Warehouse Café Properties, LLC ("Warehouse Café"), seeks review of the trial court's judgment granting an exception of prescription filed by intervenor, River District Neighborhood Investors, LLC ("RDNI"), dismissing with prejudice the plaintiff's action against RDNI, the defendant, Ernest N. Morial New Orleans Exhibition Hall Authority (the "Authority") and intervenor, Topgolf USA New Orleans, LLC ("Topgolf"). For the reasons that follow, we affirm.

## BACKGROUND

This action for injunctive relief arises from leases entered into between the Authority and RDNI. The Authority is a political subdivision of the State of Louisiana and the owner of the New Orleans Ernest N. Morial Convention Center (the "Convention Center"). The Authority owns 39 acres adjacent to the Convention Center and sought to develop the property into the "River District," a mixed-use development. In order to select a master developer for the project the Authority issued a request for qualifications ("RFQ") on September 6, 2019. The

Authority responded to three out of five qualified respondents. On December 20, 2019, the Authority evaluated requests for proposals ("RFP") and began conducting interviews. On March 24, 2021, the Authority selected RDNI as master developer. On October 26, 2022, the Authority and RDNI entered into a master development agreement and several leases, which were thereafter amended on May 1, 2023. The 39 acres were leased on a parcel by parcel basis to RDNI, who then subleased the parcels to other entities. RDNI broke ground on the project on November 29, 2023.

On December 11, 2023, Warehouse Café filed a petition, asserting standing as a Louisiana taxpayer, requesting relief in the form of a temporary restraining order ("TRO") suspending the leases between the Authority and RDNI, a TRO suspending the lease between RDNI and Topgolf, and preliminary and permanent injunctions. The foundation for the claims was that the leases were unlawful gratuitous donations under Article VII, §14 of the Louisiana Constitution. On December 18, 2023, Warehouse Café amended its original petition to include additional leases between the Authority and RDNI. On December 20, 2023, the Authority and RDNI filed exceptions of prescription, no cause of action, and no right of action. The following day, on December 21, 2023, the district court heard the exceptions, denying the exceptions of no cause of action and no right of action, but sustaining the exception of prescription. On January 5, 2023, the district court entered a final judgment granting the exception of prescription and dismissing with prejudice all of Warehouse Cafe's claims. It is from this judgment that Warehouse Café now appeals.

**DISCUSSION**

On appeal, Warehouse Café raises the following assignments of error: (1) the district court erred in granting the peremptory exception of prescription and dismissing with prejudice Warehouse Café's challenge to the unlawful use of public funds pursuant to Article VII, §14 of the Louisiana Constitution; (2) the district court erred in applying Louisiana's public bid laws to this case; and (3) the district court erred in not allowing Warehouse Café an opportunity to amend its petition before dismissing its claims with prejudice.

An appellate court's review "of a ruling sustaining an exception of prescription 'varies based on whether evidence was introduced in the trial court at the hearing on the exception.'" *Fisher v. Blood Ctr.*, 20-0551, p. 5 (La. App. 4 Cir. 02/10/21), 313 So.3d 1275, 1279 (citations omitted). When, as in the instant case, evidence was introduced at the hearing, the trial court's findings of fact on the issue of prescription are subject to the manifest error or clearly wrong standard of review. *Id.*

"Applying the manifest error standard of review, in order to reverse a trial court's determinations of fact, the appellate court must review the entire record and conclude that (1) a reasonable factual basis does not exist for the trial court's finding, and (2) the record establishes that the finding is clearly wrong or manifestly erroneous." *Libertas Tax Fund I, LLC v. Taylor*, 21-550, p. 3 (La. App. 4 Cir. 06/16/22), 342 So.3d 1083, 1086 (citation omitted). "If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Ramelli Group., L.L.C. v. City of New*

3

*Orleans*, 08-0354, p. 10 (La. App. 4 Cir. 10/22/08), 997 So.2d 612, 619 (citations omitted).

Warehouse Café argues that its claims have not prescribed as the claims are rooted in Article VII, §14(A) of the Louisiana Constitution. Warehouse maintains that the claims pursuant to Article VII, §14(A) of the Louisiana Constitution have no prescriptive period and that the lack of a prescriptive period was a deliberate choice by the Louisiana Legislature. Further Warehouse asserts that absolutely null contracts cannot prescribe. Warehouse Café also argues that the district court erred in finding that its claims had prescribed pursuant to Louisiana public bid laws when the leases were not obtained through a public bid process. Finally, Warehouse Café argues that if public bid laws are to be applied, it should have been granted leave to amend its petition.

Warehouse argues that for liberative prescription or peremption to apply such must be "based upon clear and unequivocal statement of law as to the period of time for the litigant to act." It further maintains that that Article VII, §14(A) of the Louisiana Constitution does not provide a time period for a litigant to act. Warehouse maintains that the law must be applied according to its generally understood meaning rather than being subject to judicial construction. *See Cajun Elect. Power Co-op., Inc. v. Louisiana Pub. Serv. Com'n.*, 544 So.2d 362, 363 (La. 1989). Additionally, Warehouse Café contends that the Legislature has not provided for a prescriptive or peremptive period given the absence of any restrictive time periods within the Louisiana Constitution providing when a taxpayer could challenge a gratuitous donation Warehouse points to several examples of when the Legislature has set time-oriented restrictions, and argues that

4

the powers to modify or establish those restrictions are solely within the province of the Legislature, not the Courts.

In support of its argument that Article VII, §14(A) of the Louisiana Constitution has no prescriptive period, Warehouse Café also looks to the Louisiana Civil Code. Warehouse argues that Louisiana Civil Code articles 2030 and 2032 are supportive of its position. La. C.C. art. 2030 states in relevant part, "A contract is absolutely null when it violates a rule of public order…[a] contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative." According to Warehouse Café's argument, these leases violate Article VII, §14(A) of the Louisiana Constitution and a violation of the Louisiana Constitution is an absolute nullity since it violates "a rule of public order" that has been "enacted for the protection of public interest." *See* La. C.C. arts. 7 and 2030. La. C.C. art. 2032 provides that an "action for annulment of an absolutely null contract does not prescribe."

Warehouse argues that the district court erred in applying public bid law to the issue of the prescriptive period. It argues that public bid laws do not apply in this case because the claims revolve solely around a constitutional violation brought by a taxpayer. La. R.S. 38:2211 provides that developments for entertainment, such as is the case here, are exempt from public bid laws. Warehouse Café asserts that the Authority was able to use the discretionary RFQ/RFP process, which does not follow the requirements for public bids. *See* La. R.S. 38:2221-26. Finally, Warehouse contends that even if this Court finds that public bid laws apply here it should be allowed to amend its petition to set forth its cause for delay in bringing suit.

The petitions filed by Warehouse Café did not request a declaratory judgment to have the agreements declared null. While a pleading's caption is not always determinative of what the pleading actually is, the substance of Warehouse Café's petition confirms it was an action for injunctive relief, not a nullity action. *See Sam v La. State Racing Comm'n.*, 23-0170, p. 4 (La. App. 4 Cir. 10/24/23), 376 So.3d 953, 956. It is the prayer for relief which determines "[t]he character of an action." *Faber v. Gondrella*, 4 So.2d 245, 246 (La. Ct. App. Orl. 1941). Here, neither the pleading caption nor prayer addresses nullification, rather only injunctive relief. This characterization is what determines the prescriptive period. *See Fishbein v. State ex rel. La. State Univ. Health Sciences. Ctr.*, 04-2482, p. 6 (La. 04/12/05), 898 So.2d 1260, 1265. This characterization is critical in determining the prescriptive or peremptive period a court will apply in the absence of an express time period delineated in constitutional provisions. Many Louisiana statutes do not contain prescriptive periods. *See Adams v. Cajun Disposal, Inc.*, 96-1304, p. 5 (La. App. 1 Cir. 03/27/97), 691 So.2d 296, 298.[1] Courts look to the underlying reason for a cause of action to determine the appropriate prescriptive period. *Brown v. Schreiner*, 11-1436, 11-1437, p. 5 (La. App. 4 Cir. 11/09/11), 81 So.3d 705, 708. As nullity was not raised in Warehouse Café's petition or amended petitions, it should not be "given consideration for the first time on appeal." *Scott v. Zaheri*, 14-0726, p. 14 (La. App. 4 Cir. 12/03/14), 157 So.3d 779, 788.

The Louisiana Supreme Court has held that a plaintiff "must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the [plaintiff] and when corrective action as a practical

---

[1] This case has been overruled in part on other grounds.

matter can be taken by the public body." *Airline Constr. Co. v. Ascension Par. Sch. Bd.*, 568 So.2d 1029, 1035 (La. 1990). The Authority selected RDNI as the master developer on March 25, 2021, and the leases were executed on October 26, 2022. Yet, Warehouse Café did not sue to enjoin the lease for Parcel 1 until December 11, 2023, and the leases for Parcels 2, 3A, 5, 6, 7, and 8 until December 18, 2023. More than one year passed from the time the leases were executed until Warehouse Café brought its action for injunctive relief. Despite there being no prescriptive period for injunctive relief under La. R.S. 38:2220, a prescriptive period can be "determined by reference to other statutes." *Adam v. Cajun Disposal, Inc.*, 96-1304, p. 5 (La. App. 1 Cir. 3/27/97), 691 So.2d 296, 298. In *Ramelli Group, L.L.C. v. City of New Orleans*, 08-0354, p. 11 (La. App. 4 Cir. 10/22/08), 997 So.2d 612, 619, this Court held that an eight-month long delay between the contract award and injunction suit constituted a "substantial delay" and that injunctive relief was am "inappropriate remedy" at that point and the plaintiff's claim was prescribed.

The appellees also argue that undermining the principles of finality, certainty, and efficiency would put publicly awarded contracts in a perpetual state of uncertainty, thus making it less attractive to pursue such contracts and wasting taxpayer money for those that are underway when disrupted. Appellees maintain that the exemption from public bid laws was the legislature's method for providing for the process to be less restrictive.

Finally, the appellees argue that Warehouse Café's petition is incurable because its claims are time-barred and La. C.C.P. art. 934 does not apply. Even in instances of violation of public bid laws that result in absolute nullity, the court has found that they must be brought timely. Accordingly, the appellees contend that

Warehouse Café cannot amend because it would be "a vain and useless act." *See Smith v. State Farm Ins. Cos.*, 03-1580, p. 6 (La. App. 4 Cir. 03/03/04), 869 So.2d 909, 913. Such a determination is within the discretion of the District Court. *Harrell-Bijou v. Guarino*, 23-0425, p. 9 (La. App. 1 Cir. 11/16/23), 379 So.3d 698, 705.

We find that Warehouse Café's action against the Authority is an injunction action – not a nullity action, as Warehouse Café now contends on appeal. Warehouse Café filed not one, but two petitions, both of which sought only injunctive relief. The petitions' captions, substance, and prayers all confirm that the nature of the case was one for injunctive relief. Therefore, the trial court did not err when it characterized Warehouse Café's claim as an injunction action.

We find that the trial court was not manifestly erroneous in finding that the Warehouse injunction action was untimely. The evidence presented in the trial court demonstrated that the Authority's River District project and the contracts facilitating the project were public knowledge and executed more than a year before Warehouse sought injunctive relief. Warehouse Café waited more than a year to file suit, and only after the parties had invested considerable resources in the project. We find that Warehouse Café did not "seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the [plaintiff] and when corrective action as a practical matter can be taken by the public body." *Airline Constr. Co. v. Ascension Par. Sch. Bd.*, 568 So.2d 1029, 1035 (La. 1990). Here, Warehouse, despite the open and public knowledge of this significant development waited over 13 months to initiate its action for injunctive relief. Accordingly, the trial court did not err in concluding that Warehouse Café's action was time-barred or prescribed.

8

**CONCLUSION**

For the above and foregoing reasons, we affirm the district court's sustaining of RDNI's exception of prescription granting judgment in favor of the Authority, RDNI, and Topgolf.  We also affirm the district court's dismissal, with prejudice, of Warehouse Café's claims against the appellees.

**AFFIRMED**