# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1579

## G. D. WOMACK TRENCHING, INC.

## VERSUS

## MAITLAND WATER SYSTEM, INC., ET AL.

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 22,666
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Sam O. Henry, III**
**Blackwell, Chambliss, Henry, Caldwell, Cagle & Camp, LLP**
**P. O. Box 1829**
**West Monroe, LA 71294-1829**
**(318) 388-1000**
**Counsel for Defendant/Appellant:**
**Jabar Corporation**

**Virgil Russell Purvis, Jr.**
**Smith, Taliaferro, Purvis & Boothe**
**P.O. Box 277**
**Jonesville, LA 71343**
**(318) 339-8526**
**Counsel for Defendant/Appellant:**
**Maitland Water System, Inc.**

**George Trippe Hawthorne**
**Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman**
**P.O. Box 3513**
**Baton Rouge, LA 70821-3513**
**(225) 387-0999**
**Counsel for Plaintiff/Appellee:**
**G. D. Womack Trenching, Inc.**

**PICKETT, Judge.**

Maitland Water System, Inc., appeals the judgment of the trial court which withdrew the award of a public contract to Jabar Corporation and awarded the contract to G. D. Womack Trenching, Inc. Jabar also appeals this judgment.

## FACTS

Maitland Water Systems, Inc. (Maitland), a public corporation, was required to move some of its water lines because the Louisiana Department of Transportation and Development (DOTD) planned to widen Louisiana Highway 15 from Sicily Island to the Concordia Parish line. Maitland and DOTD entered into a contract regarding the relocation of the lines. Maitland was responsible for doing the work, DOTD was to pay for the work, and all plans had to be coordinated and approved by DOTD through its project engineer, James Free. Maitland retained McManus Consulting Engineers (McManus) to oversee the preparation for the project, including soliciting bids for work related to the relocation of the water lines. One of the elements of the project involved digging a trench, placing pipe, and backfilling the trench.

McManus advertised the right to bid on the project in September 2002. The Bid Form, which had been sent to DOTD for approval in June 2002, included a Base Bid and an Additive Alternative No. 1. The Base Bid included all phases of the project. The Alternate Bid was included because in the areas within the road's right of way, it was contemplated that the trenches could not simply be backfilled with the dirt originally removed from the trench but had to be filled with select backfill. The alternate bid form suggested that 3,650 cubic yards of backfill would have to be removed, disposed of, and replaced with select backfill. The bid form asked for a unit price per cubic yard for this work.

1

The bids were opened on October 8, 2002, by Max Larche of McManus. The total amount of the bids was as follows:

| Contractor | Base Bid | Alternative No. 1 | Total |
|---|---|---|---|
| Womack | $212,218.00 | $21,900.00 | $239,118.00 |
| KCS Construction | $235,192.40 | $34,675.00 | $269,867.40 |
| Camo Construction | $256,018.80 | $35,587.50 | $291,606.30 |
| Jabar | $197,926.71 | $87,602.00 | $285,528.71 |

While Jabar had the lowest Base Bid, its bid for Alternative No. 1 was at a rate of $4.00 per cubic yard for disposal of backfill and $20.00 per cubic yard for select fill. Since Womack's bid for Alternative No. 1 was at a rate of $1.00 for disposal of backfill and $5.00 for select fill, its total bid price was lower.

On October 11, 2002, Larche sent the bid tabulation sheet and Jabar's low Base Bid to John Tyler of DOTD. After reviewing the bid sheets, Tyler called Larche and told him that the project did not require 3,650 cubic yards of backfill to be replaced with select fill because select fill would only have to be used where the water line crossed the road. After speaking with Tyler, Larche reviewed the plans and determined that no more than 140 cubic yards of backfill would have to be disposed of and replaced with select fill. On October 24, 2002, Larche recalculated the total amounts of the bids, changing only the quantity for the Alternative No.1. The result was as follows:

| Contractor | Base Bid | Alternative No. 1 | Total |
|---|---|---|---|
| Womack | $212,218.00 | $890.00 | $218,058.00 |
| KCS Construction | $235,192.40 | $1330.00 | $236,522.40 |
| Camo Construction | $256,018.80 | $1365.00 | $256,383.80 |
| Jabar | $197,926.71 | $3360.00 | $201,286.71 |

Following this recalculation, it was determined that Jabar was the lowest bidder. McManus recommended to Maitland that the contract be awarded to Jabar. DOTD approved, and the contract was awarded to Jabar. The other bidders, including

2

Womack, were given notice that Jabar had been awarded the contract on November 18, 2002.

Representatives of Jabar, McManus, and Maitland met to discuss the project on January 9, 2003. On January 14, because DOTD requested that a stop work order issue because of delays in clearing and grubbing, a stop work order was issued by McManus. The letter from Larche to Jabar specifically stated that Jabar should continue ordering materials for the project. On April 11, 2003, Jabar sent an invoice to DOTD for pipe that it had purchased for the project and was stockpiling at the Maitland office.

On May 5, 2003, Womack filed a petition against Maitland and Jabar to enjoin performance of the contract between Maitland and Jabar and to declare the contract illegal and void. Womack claimed that its bid was the lowest bid and that Maitland engaged in post-bid manipulation that made Jabar's bid the lowest bid. Womack also sought an order declaring it to be the lowest bidder and awarding it the contract. The trial court issued a Temporary Restraining Order on May 5, 2003.

Maitland and Jabar answered the petition, asserting that the bid was not manipulated for the purpose of awarding Jabar the bid. Maitland claimed it had the authority by the terms of the bid itself to modify the alternate bid to conform to the work requirements of DOTD. Maitland and Jabar also claimed that Womack's suit was untimely and that the delay of six months before filing suit constituted waiver of objection. The trial court held a hearing on May 29, 2003, which the parties stipulated would constitute trial of the preliminary and permanent injunctions and all other issues.

The trial court issued a written ruling on August 23, 2003. The trial court ruled that the reduction of the quantities in the alternate bid was a violation of La.R.S.

3

38:2212. The trial court further found that the bid form, reserving to Maitland the right to decrease quantities, did not allow Maitland to recalculate the bid using lower quantities for the alternate bid. The trial court further found that Womack's suit was not untimely. The trial court declared the contract between Maitland and Jabar null and void and ordered Maitland to award the contract to Womack. Finally, the trial court authorized Maitland to issue a change order allowing it to purchase the pipe Jabar had stockpiled and deducting that from the contract awarded to Womack. A judgment to that effect was signed on September 8, 2003. Maitland and Jabar now appeal that ruling.

## ASSIGNMENTS OF ERROR

Maitland asserts three assignments of error:

1. The Trial Court erred in its conclusion under the undisputed facts that the recalculation of the alternative bids and the award to Jabar violated La.R.S. 38:2212.

2. The Trial Court erred in concluding that the reservation of the right to reduce quantities did not grant Maitland the right to recalculate the bid.

3. Alternatively, the Trial Court erred in ordering that the contract be awarded to Womack.

Jabar Corporation adopts the assignments of error alleged by Maitland and also complains that the trial court erred in refusing to find that Womack's petition was untimely and, thus, failed to state a cause of action.

## DISCUSSION

We will begin by addressing the issue of whether Womack's complaint was timely. Initially, we note that Womack filed this suit as an interested party pursuant to La.R.S. 38:2220, which states, in pertinent part:

4

A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.

B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.

The statute itself does not include any specific time limits for filing a suit seeking injunctive relief. Jabar alleges that the supreme court's ruling in *Airline Construction v. Ascension Parish School Board*, 568 So.2d 1029 (La.1990), mandates a finding that the trial court erred in finding the suit was timely. The supreme court held in *Airline Construction* that an unsuccessful bidder does not have a cause of action to recover damages unless the unsuccessful bidder timely seeks injunctive relief. In the instant case, Womack filed a suit for injunctive relief, not a suit seeking damages. In the course of its opinion, however, the supreme court did discuss the timeliness of a suit for injunction:

We hold that an unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter can be taken by the public body. Cf. *Gray v. State of Louisiana through the Department of Highways*, 250 La. 1045, 202 So.2d 24 (1967) (landowners, although aware that their property was being appropriated for borrow pit purposes, did not seek to enjoin the entry onto their land and the removal of dirt, but filed suit only two days before the job was completed, and the court denied damages for trespass, limiting recovery to just compensation for the property taken). If an aggrieved bidder does not timely file a suit for injunction, he has waived any right he may have to claim damages against the public body or the successful bidder.

The timeliness of a suit for injunction depends on the facts and circumstances of the particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the

successful bidder, and the time period between the awarding of the illegal contract and the completion of construction.

*Id.* at 1035.

The trial court found that "[t]he unsuccessful bidder filed suit for injunction and declaratory relief prior to any work being performed on the project in question." Whether corrective action can be taken is but one factor to be weighed in determining the issue. Other factors include when the aggrieved party knew the contract was awarded wrongfully. In this case, Womack was aware of all of the facts relating to the bid when he received notice that Jabar had been awarded the contract in November 2002. Womack did not file this suit until April 2003, and gave no reason for the delay. The trial court concluded that since a stop order had been issued by DOTD and work had not begun, the suit was timely. Jabar alleges that they bought materials for the job and made other arrangements in order to begin work on the project when the stop order was lifted. The trial court found that payment for the materials could be arranged so that Jabar would be returned to its original position. The second part of the test is whether "corrective action as a practical matter can be taken by the public body." Because the stop work order had been issued, this condition was met. The suit is timely, and we will proceed to discuss the merits of the case.

The trial court found that the recalculation of the bids violated La.R.S. 38:2212(A)(3)(e),[1] which provides:

> Any proposal shall include no more than three alternates. An alternate bid by any name is still an alternate. Alternates, if accepted, shall be accepted in the order in which they are listed on the bid form. Determination of the low bidder shall be on the basis of the sum of the base bid and any alternates accepted. However, the public entity shall reserve the right to accept alternates in any order which does not affect determination of the low bidder.

---

[1] The trial court incorrectly designates this section of the statute as R.S. 38:2212(d).

By altering the quantities used in the alternate bid, the determination of the low bidder was affected. Maitland correctly points out that the law would sanction any one of three alternatives to the action it took. First, it could have accepted the base bid and alternate of Womack and then executed a change order. Second, it could have rejected all bids and called for new bids. Finally, it could have accepted the base bid of Jabar and rejected all of the alternate bids and then executed a change order. The trial court suggested the final option would have been most appropriate, but Maitland argues that since there was no unit price for select fill and backfill disposal this would have been impossible. A change order can be within the scope of a contract and not include merely additions or deletions from the existing materials. This assignment of error lacks merit, as Maitland chose an alternative that is not sanctioned by the law.

The second assignment of error alleged by Maitland is that the language of the bid clearly put the bidders on notice that the amounts in the contract might be changed. On the final page of the bid, the following clause appears:

> The OWNER reserves the right to accept or reject any, all or any one of the above Items. Due to the nature of the work, quantities may be increased or decreased. Therefore, Contractors are advised not to submit unbalanced bids. The low BIDDER will be determined by the combination of Base or Alternate Items, as required to implement this project. BIDDERS must submit bids for all Bid Items (Base and Alternate).

The trial court found that this language, as well as a note at the bottom of the page reserving the right of the owner to have change orders executed by the contractor, did not grant to Maitland the authority to change the quantities in the alternate bid section. We find that as used in the bid form "Item" refers to either the Base Bid or the Alternate Bid, not to the individual specifications included in those bids. As such, this paragraph is merely a restatement of the law and clearly enunciates Maitland's right to accept both the base bid and the alternate bid, accept the base bid and reject the

7

alternate bid, or reject both bids. Reading the paragraph as the appellants suggest invites the possibility of manipulating quantities and specifications to reach a desired result. This assignment of error lacks merit.

Finally, Maitland argues that the trial court erred in awarding the contract to Womack rather than rebidding the contract. In *Haughton Elevator Division v. State, through the Division of Administration*, 367 So.2d 1161 (La.1979), the supreme court determined that although Haughton was the low bidder on the contract at issue, the contract had been awarded to the second lowest bidder. Upon determining that Haughton's bid had been improperly rejected, the supreme court reversed the trial court's denial of the appellant's request for a preliminary injunction and remanded the case to the district court with instructions "that it issue a preliminary injunction restraining, enjoining, and prohibiting the defendant . . . or any person acting on its behalf from awarding the . . . contracts at issue to any person, firm, or corporation other than the plaintiff Haughton Elevator Division, the low bidder on such contracts." *Id.* at 1169-70. Accordingly, we find no error in the ruling of the trial court in the instant matter which orders that the contract be awarded to the lowest bidder.

## CONCLUSION

We agree with the trial court that the appellee's suit for injunction was timely filed. We further agree that Maitland violated La.R.S. 38:2212(A)(3)(e) by recalculating the bid prior to awarding the contract to Jabar. The trial court acted within its authority by ordering the contract to be awarded to the appellee. The judgment of the trial court is affirmed. Costs of this appeal are to be divided equally between the appellants.

**AFFIRMED.**

8