I,CARAWAY, J.
The unsuccessful bidder for a public works contract sued the school board and the successful contractor/bidder for damages. In 2003, this court, on the supervisory writ application of the school board, granted the peremptory exception of no cause of action. The case was remanded to allow plaintiff to amend its pleadings to request injunctive relief under La. R.S. 38:2220(B), if “still available,” or to allege the circumstances that existed which made the filing of a timely suit for injunction impossible. On remand after the amendment of the petition, the trial court granted the school board’s and contractor’s exceptions of no cause of action. Additionally, the plaintiffs claim against the State Licensing Board for Contractors for its licensing of the successful contractor/bidder was also dismissed by the trial court. Finding no error in the rulings of the trial court, we affirm.

Facts

On May 28, 2002, the Ouachita Parish School Board (“School Board”) voted to advertise Construction Project No. 01102A involving renovations for West Monroe High School. The project, described as “Technology & Classroom Additions,” required a base bid for the “technology wing” and bids for three alternates, which included (1) covering an open drainage ditch between the football stadium and the parking lot; (2) constructing an auditorium handicap ramp; and (3) extending and recovering the new athletic track.
| thereafter, the project was advertised and a pre-bid meeting occurred. The bids were opened and tabulated by the School Board on August 6, 2002. The following week, the School Board convened at its regular meeting and voted 4 to 3 to accept James Holyfield Construction, Inc. (“Holy-field”) as the lowest base bidder. The bids pertaining to the alternate items for the project were completely excluded by the School Board. On August 21, 2002, the School Board and Holyfield executed a $6,647,000 contract for the project.
J.S. Rugg Construction, Inc. (“Rugg”) filed suit against Holyfield and the School Board on August 22, 2002, contending that it should have been recognized as the lowest bidder and awarded the contract because the aggregate of its base bid and its bids on the alternate items rendered it the lowest bidder, not Holyfield. Rugg further alleged that by excluding the bids on the alternate items, the School Board unfairly and fraudulently manipulated the bid process in violation of state law. The petition also alleged that no work had yet begun on the project. The petition concluded with a prayer asking that it be paid its $6,865,000 bid price upon its performance of the work. However, the petition requested no injunctive relief. Alternatively, the petition sought recovery of Rugg’s lost profits and damages.
The School Board answered, also urging a peremptory exception of no cause of action. In support of its exception, the School Board argued that Rugg failed to file the proper action under La. R.S. 38:2220(B), which, requires an aggrieved *716 bidder to pursue injunctive relief in contesting the |3award of a public contract. After the trial court denied the School Board’s exception, this court granted a supervisory writ in 2003, and reversed the trial court, as follows:
In order for an unsuccessful bidder on a contract which is subject to the provisions of the public bid law to be able to maintain an action for damages, it is required to timely seek an injunction preventing the public body from awarding the contract and/or preventing performance under the contract, or state in its petition the reasons why seeking such an injunction was not possible. Airline Construction Company, Inc. v. Ascension Parish School Board, 568 So.2d 1029 (La.1990); Webb Const., Inc. v. City of Shreveport, 27,761 (La.App.2d Cir.12/6/95), 665 So.2d 653. In the present case, it appears clear that the unsuccessful bidder had the requisite knowledge to file a timely suit for injunction to prevent performance under the contract. The present suit seeking nullification of the contract and damages was filed two days after the award of the contract and, thus presumably before any substantial work could be performed on the project. The purpose of the public bid law is to protect the taxpayer from extortionate prices and public officials who might award public contracts on the basis of favoritism. Haughton Elevator Division v. State, Through Division of Administration, 367 So.2d 1161 (La.1979). In essence, the law attempts to ensure the wise use of the taxpayers’ money. To allow a suit for damages by an unsuccessful bidder which failed to avail itself of its injunctive remedies without just cause would reward the bidder which fails to mitigate its damages at the expense of the taxpayers.
J.S. Rugg’s petition does not state in specific detail the circumstances which would have prevented it from filing a timely suit to enjoin performance under the contract. Nor do we know whether such relief might still be available as the timeliness of a suit for injunction depends on the facts and circumstances of the particular case. Accordingly, we reverse the trial court and grant the School Board’s exception of no cause of action. However, J.S. Rugg should be allowed the opportunity to amend its pleading to request injunctive relief, if it is still available, or to make any other allegations which might remove the grounds on which the exception is being granted. La. C.C.P. [art.] 934. Consequently, the matter is also remanded to the trial court and J.S. Rugg shall have 30 days within the date of this order to amend its pleading so as to |4remove the grounds of the exception. If J.S. Rugg cannot or does not so amend its pleadings, then the action shall be dismissed. La. C.C.P. [art.] 934.
The day after the date of the above order, Rugg amended its petition to add as a defendant, the State Licensing Board for Contractors (“Licensing Board”), alleging that it breached its duty to insure compliance under La. R.S. 37:2150 for the licen-sure requirements for Holyfield. One month later, Rugg again amended its petition, alleging that because it had been required to maintain a $6.8 million performance bond in order to be eligible to bid for the contract, it was financially impossible for Rugg to also obtain the security bond ostensibly required for the pursuit of injunctive relief.
Thereafter, the Licensing Board moved for summary judgment. The School Board and its insurer urged a second peremptory exception of no cause of action, or alternatively, a motion for summary judgment, in which they argued that Rugg’s *717 petition, as amended after remand, still did not state a cause of action. Holyfield also again urged the peremptory exception of no cause of action, or alternatively a motion for summary judgment, arguing that Rugg’s simple failure to pursue an injunction as required by the public bid law precluded it from obtaining relief.
The trial court rendered judgment in favor of the School Board and its insurer, and Holyfield, granting their respective exceptions. The trial court also granted the Licensing Board’s motion for summary judgment, and denied plaintiffs motion for summary judgment. It is from this judgment that Rugg appeals.
| sDiscussion
The leading case dealing with this type of public bid law dispute is Airline Const. Co., Inc. v. Ascension Parish School Bd., 568 So.2d 1029 (La.1990). Airline was an action for damages by an unsuccessful bidder against a school board in which the supreme court sustained an exception of no cause of action. The court’s ruling dismissing the suit noted that the petition did not state whether the project was completed when the suit was filed, whether a suit for injunction had been timely filed or whether “circumstances existed which made the filing of a timely suit for injunction impossible.” Id. at 1035. In granting the exception of no cause of action, the court explained:
The public contracts law is a prohibitory law, founded on public policy, which was enacted in the interest of the taxpaying public. The purpose of the law is to prevent public officials from awarding contracts on the basis of favoritism or at possibly exorbitant and extortionate prices.
In a public project advertised for public bidding, there is no contractual relationship between an unsuccessful bidder and the public body who advertises for bids. However, although an unsuccessful bidder does not have a cause of action in contract against the public body, the lowest responsible bidder does have a cause of action to challenge timely the rejection of his bid and to compel the award of the contract to him. Louisiana jurisprudence has long recognized that while a public body has some discretion in awarding public contracts, subject to judicial review, an unsuccessful bidder may sue to enjoin the public body from executing the contract or to set aside the award of the contract to another bidder when the public body acted arbitrarily in selecting the successful bidder.
In 1979 the Legislature amended La. R.S. 38:2220 to recognize expressly this right to injunctive relief when a public body violates the public contract law and to authorize a civil penalty against a member of the public body who authorizes the violation. The statute, however, neither authorizes nor denies a cause of action for damages against the public body.
|fiIn the present case the Board’s exception of no cause of action asserts that an unsuccessful bidder does not have a cause of action under any circumstances to recover damages against a public body which awards a public contract in violation of the public bid law. We do not reach this broad issue, but rather decide this case on the narrower holding that an unsuccessful bidder on a public contract who fails to resort to the relief granted by statute by attempting to enjoin timely the execution or the performance of the contract, when the facts necessary for injunctive relief are known or readily ascertainable by the bidder, is precluded from recovering damages against the public body.
Airline Const., supra at 1032-1033 (citations omitted, emphasis supplied).
*718 The court’s recognition in Airline that “circumstances” might have existed “which made the filing of a timely suit for injunction impossible” indicates that when the public body creates those circumstances, a possible cause of action in tort for damages might exist against the public body beyond the express remedies of the public bid law statute, La. R.S. 38:2220. Nevertheless, the court only left the door open for the plaintiff to possibly state such cause of action by amendment pursuant to La. C.C.P. art. 934, thus avoiding definition of the precise nature of such possible cause of action.
Following the ruling in Airline, the Legislature in 1990 amended La. R.S. 38:2220(B) to provide an interested party the right to an “ordinary proceeding to seek appropriate remedy to nullify a contract.” [1] This new provision was in addition to the injunctive relief provided in the statute at the time of the Airline ruling. Significantly, the amendment to the statute ^indicates that the allowance for an ordinary proceeding is limited to the nullification of the public contract. The amendment does not provide that a successful plaintiff, who might nullify an improperly bid contract through an ordinary proceeding, is entitled to damages for that plaintiffs profits as a rejected bidder. Therefore, when this court had occasion to address the effect of the 1990 amendment in Webb Const., Inc. v. City of Shreveport, 27,761 (La.App.2d Cir.12/6/95), 665 So.2d 653, 656, we held as follows:
Webb urges that after a contract has been actually awarded, the only available statutory relief is a suit like the one it filed, an ordinary action for damages.
Webb further argues that its conduct satisfied the court’s concerns in Airline Const. Co., supra, in that Webb took every reasonable step to uncover the irregularity before the execution of the contract with Netherton. Because it complied with R.S. 38:2220, Webb contends it is entitled to damages, bid expenses and lost profits....
We do not read the 1990 amendment to R.S. 38:2220 B as excusing an unsuccessful bidder from the necessity of taking prompt action to remedy an alleged violation of public contracts law. The unsuccessful bidder must still attempt timely to enjoin the execution or performance of a contract, when the facts necessary for injunctive relief are known or are readily ascertainable by the bidder. If the bidder does not take such action, then he is precluded from recovering damages against the public body. Thus we view the rationale of Airline Const. Co., supra, as essentially unchanged by the amendment.
One other ruling of this court which addresses the procedural process available to a rejected bidder like Rugg is D’Arbonne Const. Co., Inc. v. Union Parish Police Jury, 31,834 (La.App.2d Cir.5/5/99), 736 So.2d 981, writ denied, 99-1549 (La.9/17/99), 747 So.2d 562. In D’Arbonne, we noted that the statute’s language providing injunctive relief allows for mandatory injunctive relief whereby the plaintiff may seek the award of the bid whether or not the contract has actually been awarded to another bidder. |Airline so held, and D'Arbonne reviewed the amended language of La. R.S. 38:2220 and *719 reaffirmed that view. Also addressed in D’Arbonne was the concept of irreparable injury which is the key to injunctive relief as provided in our law. La. C.C.P. art. 3601. The threat of irreparable harm to the rejected bidder in D’Arbonne, as in Airline and Webb, was that the award of the bid to the successful bidder can cause work on the project to begin and be finished before the end of the judicial proceeding brought by the rejected bidder. The court stated:
La. R.S. 38:2220’s provision for injunc-tive relief therefore is statutory recognition that irreparable injury may be prevented by the trial court’s immediate awarding of the public contract to the appropriate bidder when a violation of the public bid laws has occurred and before work on the contract has commenced. That same irreparable injury would continue to exist for the party who must appeal following a trial court’s improper ruling at the preliminary injunction hearing. This court’s review through the supervisory writ process is routinely provided where a trial court’s error causes irreparable injury.
D’Arbonne at 982. D’Arbonne thus recognized that immediate judicial review through a preliminary injunction hearing at the trial court and with expedited supervisory appellate review thereafter was the proper procedure. The additional procedural right under La. C.C.P. art. 3612 for the ordinary appeal of a ruling relating to the grant or denial of a preliminary injunction may be too slow because of the delay associated with such appeal. Therefore, D’Arbonne recognized that appellate review by the supervisory writ process shall be available to the unsuccessful bidder.
Upon this court’s initial grant of the School Board’s exception of no cause of action, Rugg was instructed to amend its petition “to request injunctive relief, if still available.” Such- amendment was not made, and we |9therefore understand that the public contract has now been performed by Holyfield making the award of the contract to Rugg impossible.
Rugg was'next allowed by our ruling to amend its petition pursuant to La. C.C.P. art. 934 to attempt to state a cause of action by alleging why it may have been prevented from seeking injunctive relief. By Rugg’s third amending and supplemental petition, Rugg asserted that it could not file for injunctive relief due to financial impossibility described in the petition, as follows:
5.
However, in order to properly bid such project, Plaintiff was required to furnish a performance bond in the amount of its bid, namely $6,865,000 (i.e. almost three times the amount of the largest bond ever furnished by Plaintiff).
6.
In order to post a bond this size, Plaintiff completely committed all its financial worth and resources, totally exhausting all available credit sources (including, of course, the personal endorsement and credit worthiness of Mr. and Mrs. Rugg).
7.
In short, after posting the $6.8 million performance bond, both Plaintiff and the Rugg family were financially “tapped out” and stretched to their absolute maximum bonding limit(s).
Rugg continues with these assertions in this appeal, arguing that “it was simply impossible for this Plaintiff to enter litigation and either maintain the $6.8 million performance bond required of ‘the successful bidder’ for the project; and/or post security required by C.C.P. art. 3610 for injunctive relief.” This argument ignores the expedited process which injunctive re *720 lief affords to avoid irreparable injury and misstates the need for security.
There are two procedural articles that address the security requirements for a party seeking preliminary injunctive relief and any appeal |inof that matter. Article 3610 states that the “preliminary injunction shall not issue unless the applicant furnishes security in the amount fixed by the court.” Article 3612(B) further provides:
An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction, but such an order or judgment shall not be suspended during the pendency of an appeal unless the court in its discretion so orders.
From these two articles, if Rugg had sought preliminary injunctive relief in August 2002 and lost at the trial court, Rugg would not have been required to post an appeal bond. Rugg’s appellate procedure in such case would be to seek immediate supervisory review by an application for writs to the appellate court, articulating the threat of irreparable injury by the performance of the contract by the other bidder. If Rugg had prevailed in the trial court, the preliminary injunction compelling the School Board to reject Holyfield’s bid and to award the contract to Rugg would issue upon the security of Rugg’s performance bond required for its public bid. That would protect the interests of the enjoined party, the School Board, while any security for the interests of Holyfield would be fixed in the court’s discretion under these articles. In any event, security protection related to the injunction’s impact on Holyfield would be far less than the entire amount of the contract.
Recently, in Broadmoor, L.L.C. v. Ernest V. Mortal New Orleans Exhibition Hall Authority, 04-0211, 04-0212 (La.3/18/04), 867 So.2d 651, the procedural process employed in that similar public bid law dispute exposes the fallacy of Rugg’s argument. The case involved an injunetion Inaction by the second lowest, and unsuccessful, bidder for its titanic $275 million public bid on the New Orleans Convention Center. See also, ruling of the lower court, Broadmoor, L.L.C. v. Ernest V. Mortal New Orleans Exhibition Hall Authority, 03-1996 (La.App. 4th Cir.12/22/03), 865 So.2d 136. In Broadm-oor, the November 3, 2003, hearing on the preliminary injunction occurred immediately after the public authority’s award of the contract to the lowest numerical bidder, Yates/Landis. The injunction sought an order rejecting the Yates/Landis bid as non-responsive to the bidding requirements, but was denied by the trial court. Immediately, Broadmoor sought supervisory review from the Fourth Circuit Court of Appeal and also, as added protection, filed a devolutive appeal under La. C.C.P. art. 3612. In a relatively short period after the ruling of the trial court, the court of appeal granted Broadmoor’s writ application, ruled in its favor, and ordered mandatory injunctive relief for the public authority to reject the Yates/Landis bid. Notably, the court of appeal’s judgment did not require that any bond be posted for the injunctive relief granted in favor of Broadmoor so as to protect the interests of the enjoined public authority or Yates/Landis. After further expedited appeal, this time by the rejected bidder, Yates/Landis, the ruling of the Fourth Circuit was affirmed by the Louisiana Supreme Court on March 18,2004.[2]
*721 The procedure of the Broadmoor rulings shows that an unsuccessful bidder, like Rugg, may obtain injunctive relief for the rejection of the bid |iaaccepted by the public authority after the award of the contract and without additional security for the preliminary injunctive relief. While the unsuccessful bidder seeking to compel the award of the contract must remain prepared for the performance bond requirements of the public contract, it would not be required to post as additional security an amount equal to the amount of the public contract to appeal any adverse ruling or, if successful, to secure a party/defendant enjoined by the court. Accordingly, Rugg’s argument that the security burden of an injunctive action justified its failure to have sought injunctive relief has no merit. Accepting the allegations of plaintiffs third amending and supplemental petition asserting financial impossibility to be true, as we must in considering the peremptory exception of no cause of action, we hold that these allegations are insufficient as a matter of law to excuse the plaintiffs failure to seek injunctive relief to prevent the School Board from awarding the construction contract to Ho-lyfield.
Next, Rugg asserts that its amended petition expands its claim against the School Board to assert a separate and independent claim for fraud. Rugg asserts that the School Board’s actions in awarding the contract to Holyfield amount to fraudulent and intentional misconduct.
Summarizing the alleged fraudulent actions, Rugg first charges that the School Board’s actual execution of the contract in favor of Rugg was deliberately intended to prevent Rugg from being able to file for injunctive relief because of Rugg’s inability to meet the financial obligations to post security for the action. We have previously addressed this exaggerated |.13assertion in the above discussion, and these allegations would not amount to fraud by the School Board.
Next, Rugg sets forth the timing of the events beginning with the August 14, 2002, vote by the School Board to accept Holyfield’s bid. Rugg then alleges that on August 16, it notified the School Board “of the impropriety, injustice and fraud at issue in this case.” In response, the School Board agreed to meet with Rugg’s representatives on August 21, and that the execution of the contract with Holyfield would be delayed until after such meeting. On August 21, the meeting occurred, yet Rugg was informed that the contract had already been executed the day before. On August 22, Rugg filed this suit alleging that no work on the contract had commenced, but failed to request injunctive relief.
Finally, Rugg argues that the School Board officials and its board intentionally and fraudulently manipulated the bid process by not accepting a complete contract for the project and the three alternatively bid items. According to Rugg, the acceptance of Holyfield’s low base bid and the rejection of the other items of the construction work represented by the alternate bids were based on a false and arbitrary “ruse” given at the School Board public hearing. The “ruse” or excuse for rejecting the alternate bids related to parking problems for vehicles at the high school.
Reviewing the allegations of the School Board’s deceptive negotiations that led up *722 to the August 21 meeting with Rugg, we do not find that any damages resulted from those activities. On August 22, Rugg filed suit. Many days before, Rugg had informed the School Board that its | ^actions were unjust and fraudulent. On August 22, 2002, the large construction job had not begun, and appropriate proceedings for injunctive relief had not been thwarted by any action of the School Board leading up to the August 21 meeting.
Regarding the School Board’s decision to proceed with the construction work covered by the base contract bid and not the three alternate bids, we do not find that the vote on that decision in a public forum amounted to fraud. Most significantly, as cited by the School Board, La. R.S. 38:2212(A)(3)(e) provides a public body with discretion to reject alternate bid items. That statute reads:
(e) Any proposal shall include no more than three alternates. An alternate bid by any name is still an alternate. Alternates, if accepted, shall be accepted in the order in which they are listed on the bid form. Determination of the low bidder shall be on the basis of the sum of the base bid and any alternates accepted. However, the public entity shall reserve the right to accept alternates in any order which does not affect determination of the low bidder.
In this case, while an action for injunctive relief by Rugg might have contested the appropriateness of the application of this statute depending upon the School Board’s bid notice proposal, the statute clearly provides a basis for the School Board’s action which cannot be viewed as a separate act of fraud.
Rugg’s final assignment of error disputes the trial court’s dismissal of its allegedly independent claims against the Licensing Board and Holyfield. Rugg alleges that Holyfield had fraudulently obtained its contractor’s license which is issued by the Licensing Board pursuant to La. R.S. 37:2150, et seq. For a contractor to obtain a license as a legal entity, it must 1^designate a qualifying party to submit an application supplied by the Board. La. R.S. 37:2156.1(D)(1). Rugg alleged in this case that the qualifying parties listed for Holyfield were no longer employed by Ho-lyfield and that the annual renewal of Ho-lyfield’s license without new qualifying parties was a violation of the law. Rugg alleged that the Licensing Board knew or should have known of this violation.
Significantly, Rugg concludes by alleging that “but for the wrongful conduct ..., plaintiff would have been awarded the contract for State Project No. 01102A,” and Rugg’s claim for damages against the Licensing Board and Holyfield is for the same lost profits that it claimed against the School Board. Additionally, Rugg argues to this court that it has standing to make these assertions against the Licensing Board and Holyfield as an interested party under La. R.S. 38:2220(B) who is attacking the public contract as an absolute nullity.
From these allegations, we find that the trial court was correct in granting Holy-field’s exception of no cause of action and the Licensing Board’s motion for summary judgment. The alleged licensing problem may have amounted to a deficiency which would render the public contract a nullity. Yet, Rugg was not a party to that contract and the contract has now been performed. Therefore, just as Rugg’s failure to timely pursue these claims against the School Board via injunction resulted in the loss of its cause of action as reviewed by this court above, Rugg likewise has no cause of action against Holyfield and the Licensing Board. Moreover, we agree with the Licensing Board that any disqualification of *723 a licensed contractor |1filike Holyfield requires an administrative review pursuant to La. R.S. 37:2158(B)(1) which would bring the problem to the attention of the board.

Conclusion

This court’s initial granting of the peremptory exception of no cause of action in this case was not overcome by plaintiffs amendments to its petition on remand and its adding of a defendant, the Licensing Board. The trial court’s dismissals of the plaintiffs claims against all defendants are affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.

. La. R.S. 38:2220(B) provides: The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.

. Unfortunately, the plaintiff in Broadmoor failed to follow Airline’s directive to also initially seek injunctive relief "to compel the award of the contract to him” and the dispute between Broadmoor and the public authority has continued. See, Broadmoor, L.L.C. v. Er *721 nest V. Mortal New Orleans Exhibition Hall Authority, 04-1274 (La.App. 4th Cir.02/02/05), 896 So.2d 251.