JUDE G. GRAVOIS, Judge.
[¿This suit arises out of a public contract to install a nurse communication sys *1212 tem at East Jefferson General Hospital. Plaintiff/appellant, Executone ■ Systems Company of La., Inc. (“Executone”), an unsuccessful bidder on the contract, sought injunctive relief, writ of mandamus, declaratory judgment, damages, and attorney’s fees from defendants/appellees, Jefferson Parish Hospital Service District No. 2 for the Parish of Jefferson, State of Louisiana, d/b/a East Jefferson General Hospital (“EJGH”), and Hill-Rom Company, Inc. (“Hill-Rom”). Executone appeals the trial court’s July 15, 2015 judgment which granted appellees’ peremptory exceptions of no cause of action and prescription and granted EJGH’s motion for partial summary judgment, dismissing all claims asserted by Executone. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

On July 10, 2013, EJGH issued Request for Proposal (“RFP”) No. 5052 to solicit proposals for a “Nurse Communication Solution” at East Jefferson General Hospital. The RFP noted that EJGH had several legacy nurse communication | ¡.¡systems, and that it sought to replace “100%” of the currently utilized nurse communication systems. EJGH was in search of “an entity” to provide “a system to fit the needs of an inpatient facility,” with it being “upgradeable to a large, multi-campus inpatient and outpatient complex.” The work would be completed in two phases. Phase 1 involved the implementation of the nurse communication system in “6 South” and the “Infusion Center,” where no nurse communication system previously existed. Phase 2, which was referred to in the RFP as “A La Carte,” involved implementing the nurse communication system in the remaining areas listed in the RFP and would require replacing previously installed nurse communication systems of various models from various manufacturers.
Three entities attended a pre-bid meeting on July 17, 2013: Executone, Hill-Rom, and Cerner Corporation.[1] After submitting proposals, in compliance with the selection process outlined in the RFP,[2] Executone and Hill-Rom attended a “demonstration day” at the hospital on August 29, 2013.
In November 2013, Executone contacted EJGH to find out who was awarded the contact and was told that a final decision had not yet been made. On January 23, 2014, while doing “a site survey of EJGH 6 South, Phase 1,” a representative of Exe-cutone noticed that Hill-Rom had installed nurse call wire in patient rooms. Notably, on the following day (January 24, 2014), Executone contacted Austin Reeder, Vice-President of Supply Chain and Support Services for EJGH, to again find out who was awarded the contract, and was told that EJGH had awarded the contract to Hill-Rom. Executone immediately contacted the- 14Jefferson Parish Inspector General’s Office, which opened an investigation into the matter. Executone was *1213 advised that the investigation would take some time.
Almost one year to the day later, on January 23, 2015, Executone filed a verified petition for a temporary restraining order, injunctive relief, writ of mandamus, declaratory judgment, and other relief. In its petition, Executone stated that upon its information and belief, Phase 1 of the project was complete or. nearly complete, but Phase 2 of the project had not yet begun. Executone asserted that EJGH violated the “Public Bid Law,” La. R.S. 38:2211, et seq., or alternatively, violated La. R.S. 38:2237(A)(8) of the Political Subdivisions Telecommunications and Data Processing Procurement Law. Regardless of which law applied, Executone alleged that the work to be done in Phase 2 of the project required the use of a Louisiana licensed contractor under La. R.S. 37:2150.1(4} and 37:2160, and upon its information and belief, Hill-Rom was not.a licensed contractor. Accordingly, Execu-tone sought a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining EJGH from proceeding with Phase 2 of the project. Alternatively, Executone sought a declaratory judgment, declaring any contract awarded by EJGH to Hill-Rom null and void. The petition further sought a writ of mandamus, damages, attorney’s fees, and “any and all other relief, legal and/or equitable,” the court was empowered to award.
The request for a temporary restraining order was denied on January 23, 2015. Thereafter, the hearing on the preliminary injunction was held on March 3 and 9, 2015. Following the testimony of Execu-tone’s witnesses, Hill-Rom and EJGH orally moved for an involuntary dismissal of the petition for preliminary injunction on the basis that the matter was untimely filed. The trial court then orally denied the request for a preliminary injunction. On March 23, 2015, the trial | .judge signed a judgment granting EJGH’ and Hill— Rom’s motion to dismiss the petition as it related to Executone’s request for a preliminary injunction and denying Execu-tone’s request for a preliminary injunction “on the basis that Executone failed to file for a preliminary injunction on a timely basis.” '
On March 5 and 6, 2015, Hill-Rom and EJGH, respectively, filed exceptions of no cause of action and prescription. Relying on the language of La. R.S. 38:2220 and pertinent jurisprudence, EJGH and Hill-Rom argued that Executone waited too long to file its suit for injunctive relief, and in doing so, waived its right to seek injunc-tive relief, damages, and the ability to nullify the contract. Further, on March 31, 2015, EJGH filed a motion for a partial summary judgment, seeking to dismiss with prejudice.all claims filed )}y Execu-tone for permanent injunctive relief, damages, and attorney’s fees on the same untimeliness basis.
On April 20) 2015, Executone filed a first supplemental and amending petition, alleging that at an unknown time following the completion of Phase 1, Hill-Rom entered into a “Bill of Materials” contract with EJGH for Phase 2. Executone further alleged that 'upon receiving a nurse call schedule from EGJH, it learned that only 6 areas of Phase 2 had been completed, and that installation in 17 areas of Phase 2 remained. Executone also alleged that it had filed a complaint with the 'Louisiana State ' Licensing Board for Contractors, based on the allegation that Hill-Rom was an unlicensed contractor, and that the licensing board was conducting an investigation in connection therewith! Executone prayed that the court issue preliminary and permanent injunctions pending that investigation.
*1214 On June 18, 2015, Executone filed an opposition to the exceptions of prescription and no cause of action and the motion for partial summary judgment. In its opposition, Executone asserted that as a result of the Louisiana. State Licensing Board’s, investigation, Hill-Rom pleaded no contest, paid fines and 1 (¡administration costs, and applied for a license.[3] Executone further argued that the parties entered into separate contracts for Phase 1 and Phase 2 of the project, and that because almost all of Phase 2 of the contract remained to be completed, its suit was not untimely, and the remainder of the contract could be stopped and awarded to a licensed contractor.
On June 24, 2015, the trial court held a hearing on Hill-Rom and EJGH’s exceptions of no cause of action and prescription and EJGH’s motion for partial summary judgment. At the hearing, the trial court found that Executone failed to act timely in seeking' injunctive relief. The trial court found that' Executone knew or should have known that' ■ Hill-Rom was awarded the contract in January 2014, and though it pursued the matter with the Inspector General’s Office, it failed to pursue the matter timely in a court proceeding. On July 15, 2015, the trial court signed a judgment granting. Hill-Rom’s exceptions, dismissing all claims against Hill-Rom with prejudice, and granting EJGH’s exceptions and motion for. partial summary judgment, dismissing all claims against EJGH with prejudice. Executone appeals this judgment.
On appeal, Executone argues that its petition to stop illegal conduct and declare an unlawful contract an absolute nullity is neither prescribed nor untimely. Specifically, Executone argues that (1) the EJGH contract awarded to Hill-Rom, an unlicensed contractor, is an absolute nullity, (2) an action to annul an absolute nullity does not prescribe, and (3) a suit for in-junctive relief to halt a largely-unfinished contract is not untimely.

J¡¡LAW AND ANALYSIS

Standards of Review[4]
At a hearing on a peremptory exception of prescription pleaded prior to trial, evidence may be introduced to support or controvert the exception. La. C.C.P. art. 931. When evidence is introduced, the trial court’s findings of fact are reviewed under the manifest error standard. Carter v, Haygood, 04-646 (La.1/19/05), 892 So.2d 1261, 1267. In the absence of evidence, an exception of prescription must be decided on the facts alleged in the petition, with all of the allegations accepted as true. Cichirillo v. Avondale Industries, Inc., 04-2894 (La.11/29/05), 917 So.2d 424, 428.
*1215 For the purpose of the peremptory exception of no cause of action, a “cause of action” refers to the operative facts which give rise to the plaintiffs right to judicially assert , an action against the defendant. Scheffler v. Adams and Reese, LLP, 06-1774 (La.2/22/07), 950 So.2d 641, 646; Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238 (La.1993). The purpose pf the peremptory exception of no cause of action is to test the legal sufficiency of the.plaintiffs petition by determining whether the law affords a remedy on the facts alleged in the petition. Id. The exception is triable on the face of the pleadings, and for purposes of resolving the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true'. Schejfler, 950 So.2d at 646; City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237, 253. Because the exception of no cause of action raises a question of law and the lower court’s decision is generally based |sonly on the sufficiency of the petition, review of the lower court’s ruling on an exception of no cause of action is de novo. Schejfler, 950 So.2d at 647. Generally, no evidence may be introduced to support or controvert the exception of no cause of action. La. C.C.P. art. 931.
Appellate courts review the' granting or denial of a motion for summary judgment de novo. Breaux v. Fresh Start Properties, L.L.C., 11-262 (La.App. 5 Cir. 11/29/11), 78 So.3d 849, 852. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter .of law. La. C.C.P. art. 966(B)(2). The burden of proof remains with, the movant. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does , not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. If the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.; Babino v. Jefferson Transit, 12-468 (La. App. 5 Cir. 2/21/13), 110 So.3d 1123, 1125.
la Timeliness of Executone’s Suit for Injunctive Relief ■
Public construction contracts are governed by La. R.S. 38:2211, et seq. La. R.S. 38:2220 provides an opportunity for an aggrieved bidder to á contract to file suit for violations of these laws, and provides, in pertinent part:
A. Any purchase,of materials or supplies, or any. contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through, summary proceeding to enjoin the award of a ' contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through *1216 ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.
Regarding timeliness in bringing such an action, the seminal case is Airline Constr. Co. v. Ascension Parish Sch. Bd., 568 So.2d 1029, 1035 (La.1990), in which the Louisiana Supreme Court held that “an unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunc-tive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter could be taken by the public body,” and that “[i]f an aggrieved bidder does not timely file a suit for injunction, he has waived any right he may have to claim damages against the public body or the successful bidder.” The court reasoned that “[a]n unsuccessful bidder should not be allowed to sit on its knowledge of the violation and claim damages after the public body can no longer as a practical matter correct any errors in letting the contract.” Id. at 1034-1035.
Following Airline, La. 38:2220(B) was amended, but the timeliness rule of law established by Airline is still applicable. Webb Constr. v. City of Shreveport, 27,761 (La.App. 2 Cir. 12/06/95); 665 So.2d 653, 656. This Court has held that the amended statute allows an unsuccessful bidder to bring an ordinary proceeding, |1nbut only when an injunction is impossible for good cause stated by the plaintiff. Otherwise any claim for damage that the unsuccessful bidder might have will' be considered waived. Hard Rock Constr. v. Parish of Jefferson, 96-797 (La.App. 5 Cir. 1/28/97), 688 So.2d 134, 137; D & O Contractors v. St. Charles Parish, 00-882 (La.App. 5 Cir. 2/28/01), 778 So.2d 1285, 1291, writ denied, 01-1213 (La.6/29/01), 794 So.2d 812; MBA Medical, Inc, supra, at 470.
In considering whether an action for injunction is timely, the court in Airline, swpra, at 1035, provided:
The timeliness of a suit for injunction depends on the facts and circumstances of the particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the successful bidder, and the time period between the awardihg of the illegal contract and the completion of construction.
Under this precept, the trial court in the present case granted the exceptions of prescription and no cause of action and the motion for partial summary judgment, finding Executone’s action for injunctive relief untimely.
On appeal, Executone argues that its suit was timely filed because the work on Phase 2 constituted a separate contract and a large portion of the Phase 2 contract remained unfinished when Executone filed its original petition. According to Executone, in June 2015 after propounding discovery and receiving “[Pjhase 2 documents,” it learned that Phase 2 substantially deviated from and expanded on the RFP, and thus, it argues, constituted a separate contract from Phase 1. Execu-tone asserts that it further learned that this Phase 2 contract was “barely underway’ when Executone filed its suit on January 23, 2015. In support of its argument, Executone relies on G.D. Womack Trenching, Inc. v. Maitland Water Sys., 03-1579 (La.App. 3 Cir. 4/07/04), 870 So.2d 579, in which the court l^found that a suit for injunctive relief filed 6 months after the contract was awarded but where the work had not yet begun was not untimely.
Upon review, we find no merit to these arguments. First, we find that only one *1217 contract was entered into between EJGH and Hill-Rom. The RFP stated that EJGH sought “one entity” to implement its new nurse communication system. One proposal was submitted at the beginning of the project, providing bids for both phases. Further, submitted under seal was a copy of the one “Master Agreement” signed by EJGH and Hill-Rom in December 2013. We do not find that the additional areas of work to be completed in Phase 2 meant that a new contract was formed for Phase 2. Further,, the RFP stated that EJGH wished to replace “100%” of the nurse communication systems it was then utilizing.
Additionally, we find Womack, supra, distinguishable. In Womack, a stop order was issued on the contract and no work had begun. Id. at 583. Because the stop order was issued, the court found that corrective action could be taken by the public body. Id. In the present case, substantial work was completed on the project when Executone’s suit was originally filed. The nurse call schedule attached to Execu-tone’s amended petition shows that by the time Executone filed suit, Phase 1 work on the project was completed and work on Phase 2 of the project was well underway.
We further find no error in the trial court’s determination that Executone was untimely in seeking injunctive relief. It is undisputed that on no later than January 24, 2014, Executone became aware that Hill-Rom was awarded the contract by EJGH. Immediately after obtaining this information, Executone contacted the Jefferson Parish Inspector General’s Office, which then opened an investigation into the matter. Thereafter, Executone waited until December 23, 2014 to issue a public records request seeking information regarding the RFP and 112the contract. Further, inexplicably, it wasn’t until January 23, 2015, nearly a year to the day after Executone found out that Hill-Rom was awarded the contract, that Executone filed suit for injunctive relief on the contract. During that time, Phase 1 of the project was completed and work on Phase 2 of the project was already well under way. We find that Executone' provided no good cause for why it failed to file suit for injunctive relief immediately after finding out that Hill-Rom had been awarded the contract. Though it did notify the Inspector General’s Office about its concerns, such notification does not equate to filing suit for injunctive relief on the contract.
Accordingly, we find that Executone failed to bring its suit for injunctive relief when it knew or should have known the grounds for attacking the alleged wrongful award of the contract and when corrective action as a practical matter could have been taken by the public body. See Airline, supra. As such, the trial court properly granted the exceptions and the motion for partial summary judgment.

Imprescriptible Absolute Nullity Action

Executone also argues on appeal that the trial court erred in deciding the prescription and timeliness, issues without first determining the nature of its claim. Executone argues that its claim is' that the contract between EJGH 'and Hill-Rom is an absolute nullity based on violations of La. R.S. 37:2160[5] and the Louisiana Contracting Law. According to Executone, this claim is a “separate issue from the public bid law,” and that, it has standing to bring *1218 this claim under La. C.C. art. 7[6] |1sand La. C.C. art 2030[7] — not just under La. R.S. 38:2220. Thus, Executone argues that its claim is not subject to the prescriptive rule established by the Supreme Court in Airline, but rather is subject to the prescriptive rule of La. C.C. art.2032, which provides that an action to annul an absolutely null contract does not prescribe.[8]
Executone supports its argument by citing both Louisiana and federal cases where the court nullified contracts entered into by unlicensed contractors based on claims brought pursuant to La. C.C. art 7 and La. C.C. art 2Ó30.[9] For example, in Tradewinds, supra, the defendant, an owner of an apartment complex that was damaged by two hurricanes, hired the plaintiff to provide mold remediation and restoration to the damaged property. Id. at 257.
The project was completed, and the plaintiff filed suit to recover the balance due on the invoices. Id. at 258. The defendant filed a counterclaim and subsequently filed motion for summary judgment on the basis, among other things, that the contract was null and void because the plaintiff was not a licensed contractor. Id. The district court granted the summary judgment and the court of appeal affirmed. Id. at 258, 262. | uExecutone highlights that even
though the contract in Tradewinds was completed at the time of the litigation, the court still recognized that it was an absolute nullity.
We recognize that the cases cited by Executone do in fact nullify contracts entered into by unlicensed contractors, even after they were completed, based on claims *1219 pursued under La. C.C. arts. 7 and 2030. However, these cases are distinguishable from the present case because they all involved actions for nullity brought by parties to the contracts. In the present case, Executone is not a party to the contract sought to be annulled.
To argue that an unsuccessful bidder has the right to have a contract declared an absolute nullity, Executone relied on Executone of Cent. La., Inc.[10] v. Hosp. Serv. Dist. No. 1, 99-2819 (La.App. 1 Cir. 05/11/01), 798 So.2d 987, unit denied, 01-1737 (La.09/28/01), 798 So.2d 116. In Exe-cutone, the plaintiff filed suit against a hospital after it awarded a contract to install a nurse call/information system to another entity, Hill-Rom. Id. at 989. The plaintiff argued that Hill-Rom was not a licensed contractor, which prohibited the contract. Id. While considering standing to bring the claim, the court of appeal found that “the award of a contract to ah unlicensed contractor, when a license is statutorily required, would be an award in contravention of a prohibitory law.” Id. at 993. Relying on both La. C.C. art.2030 and La. R.S. 38:2220(B), the court noted that “the court, on its own motion, and any interested person, may attack-a contract as an absolute nullity on those grounds,” and found standing for the plaintiffs nullity action. Id. In the present case, we find that Executone has standing to bring its nullity claim not just pursuant to La. C.C. art. 2030, but rather pursuant to both La. C.C. art. 2030 and La, R.S. 38:2220.
In J.S. Rugg Constr., Inc. v. Ouachita Parish Sch. Bd., 39,340 (La.App. 2 Cir. 3/02/05), 895 So.2d 713, 715, writ denied, 05-0859 (La.6/17/05) 904 So.2d 703, an unsuccessful bidder brought suit against the successful bidder and the Ouachita Parish School Board for violations of the public bid law. It also brought an independent claim against the State Licensing Board for Contractors. Id. at 716. The basis of the claim was that the successful bidder was not properly licensed, and that the Licensing Board was fraudulent in issuing the successful bidder a license. Id. at 722. The plaintiff argued that it had standing to bring this independent claim pursuant to La. R.S. 38:2220. Id. The court recognized that this could have been an issue that amounted to nullification, but went on to note that the plaintiff was not a party to the contract and the contract had already been performed. . Further, just as it had found that the other claims against the School Board and the successful bidder were not timely sought and thus there was no cause of action, it found that there was no cause of action for this claim against the Licensing Board because of untimeliness. Id.
As the court in J.S. Rugg applied Airline ’s timeliness requirement to- the companion claim brought against the Licensing Board, we do so here as well with respect to Exeeutone’s companion nullity claim. Accordingly, the" timeliness standard associated with Executone’s claims agáinst defendants brought pursuant to the public bid law also applies to Execu-tone’s nullity claim against these same defendants. Thus, we do hot find that the trial court erred in addressing the timeliness requirement prior to' addressing whether or not a license was required by Hill-Rom. '
' ¡^CONCLUSION
For the foregoing reasons, we affirm the trial court’s judgment granting the per *1220 emptory exceptions of prescription and no cause of action and the motion for partial summary judgment.

AFFIRMED

. Cerner Corporation was originally named as a defendant in this suit; however, a judgment dismissing Executone’s claims against Cerner Corporation was signed on April 20, 2015.

. The RFP outlines a two-step selection process. For step one, EJGH would evaluate, score, and rank the responses to the RFP based on criteria listed in the RFP. Based on these rankings, EJGH would select up to two of the top-ranked proposals as finalists. For step two, the finalists would be required to provide a formal presentation and product demonstration to EJGH's selection committee, followed by a question and answer session. Afterwards, the selection committee would select the finalist that "yields the best value to perform the implementation of a Nurse Communication System and award the Agreement.”

. Executone attached a copy of the transcript from the Louisiana Licensing Board’s hearing • to its opposition. On appeal, EJGH argues that the transcript from the Louisiana Licensing Board hearing was never properly offered or accepted into evidence, did not bear a seal or other indicia of authentication, and did not reflect that the statements within were made under oath. In its reply brief, Executone asserts that neither defendant objected to the attachment of the transcript to its opposition.

. Parties have challenged the timeliness of bringing claims pursuant to La. R.S. 38:2220 by filing exceptions of prescription and no cause of action. MBA Med. v. Jefferson Parish Hosp. Serv., 97-997 (La.App. 5 Cir. 1/27/98), 707 So.2d 467; Ramelli Grp., L.L.C. v. City of New Orleans, 08-0354 (La.App. 4 Cir. 10/22/08), 997 So.2d 612, writ denied, 08-2773 (La.2/06/09), 999 So.2d 779. In Ramelli, appellee filed a peremptory exception, or alternatively, a motion for summary judgment which was granted. Id. at 614. In its analysis, the court reviewed the timeliness requirement under the laws of an exception of prescription. Id. at 615.

. La. R.S. 37:2160 provides, in pertinent part:
A.(l) It shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter.

. La.'C.C. art 7 provides:
Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.

. La. C.C. art,2030 provides:
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.' Absolute nullity may be invoked by any person or may be declared by the court qn its own initiative. ■

. On appeal, Hill-Rom and EJGH argue "in defense that this argument regarding nullity should not be considered by this Court because it was not advanced by Executone at the trial court level. They argue that Execu-tone failed to raise the nullity argument, specifically that this is an imprescriptible action to have the contract declared absolutely null, in any of its pleadings or briefs filed in the underlying proceedings, and failed to argue the point during any of the hearings held in the trial court. Thus the trial court never addressed such argument because it was never presented to it,
This Court has held that it will not consider issues raised for the first Time on appeal, which are not pleaded in the court below, and which the trial court" has not addressed. First Bank & Trust v. Treme, 13—168 (La.App. 5 Cir. 10/30/13), 129 So.3d 605, 610. Upon review of the record, we find that Executone prayed in its .petition that the contract between EJGH and Hill-Rom be found to be null and void and also persistently argued that the contract required a licensed contractor. Further, at the hearing on the exceptions, Executone stated, "There’s no prescription for an illegal contract.’’ However, it does not appear that Executone ever specifically státed that it was bringing its claim for nullity under La. C.C. arts. 7 and 2030- and not just under La. 38:2220, In any event, we believe that Exe-cutone’s nullity argument was sufficiently raised in the lower court and accordingly we will address these assignments.

.Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC, 578 F.3d 255 (5th Cir.2009); Touro Infimiary, Preferred Continuum Care-New Orleans v. Travelers Prop. Casualty Co., No. 06-3535, 2007 U.S. Dist. LEXIS 10373, 2007 WL 496858, at *2-5 (E.D.La, Feb. 13, 2007); Hagberg v. John Bailey Contractor, 435 So,2d 580 (La.App. 3d Cir, 1983), writs denied, 444 So.2d 1245 (La. 1984); West Baton Rouge Parish School Bd. V.T.R. Ray, Inc., 367 So.2d 332. (La.1979); Carriers v. Jackson Hewitt Tax Service Inc., 750 F.Supp.2d 694 (E.D,La.2010).

. Executone of Central La., Inc., is a separate entity from appellant, Executone Systems Company of La., Inc.